FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

'2016 AUG 12 P 3: 29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| THOUSAND OAKS BARREL CO. LLC<br>    a Virginia limited liability company,<br><br>        Plaintiff,<br><br>        v.<br><br>DEEP SOUTH BARRELS LLC,<br>    a Texas corporation,<br><br>Wood Harbour d/b/a Renaissance Barrel,<br>    a Texas company,<br><br>Texas Renaissance Festival Inc.,<br>    a Texas corporation,<br><br>Southwest Festivals, Inc.,<br>    a Minnesota Corporation,<br><br>The Arizona Renaissance Festival,<br>    an Arizona Corporation<br><br>Man Cave Gifts,<br>    a Texas company,<br><br>Red Head Barrels LLC,<br>    a Texas limited liability company,<br><br>Three Gingers Holdings LLC,<br>d/b/a/ Longhorn Barrels,<br>    a Texas limited liability company,<br><br>American Oak Barrel LLC,<br>    a Maryland limited liability company,<br><br>and<br><br>Craftsman Barrel Company,<br>    a Michigan corporation,<br><br>        Defendants. | Case No. 1:16-CV-1035<br>(TSE/JFA)<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1

Plaintiff Thousand Oaks Barrel Co. LLC, its predecessor-in-interest Thousand Oaks Barrel LLC, and its predecessor-in-interest Thousand Oaks Barrel Co. ("Thousand Oaks" or "Plaintiff"), by and through its undersigned counsel, complains against multiple defendants as follows:

## NATURE OF THE ACTION

1.      This is an action to for an injunction, an accounting and money damages arising from Defendants' willful infringement of Thousand Oaks intellectual property including trademarks, copyrights, and violations of Thousand Oaks' property including trademark dilution, false designation of origin and passing off, counterfeiting of goods, misappropriation of trade secrets, misappropriation of product creations, conversion of property, and unfair competition under federal laws and common law.

## THE PARTIES

2.      Plaintiff Thousand Oaks Barrel, LLC and its predecessor-in-interest Thousand Oaks Barrel Co. (hereinafter "Thousand Oaks" or "Plaintiff") is a Virginia corporation with a principle place of business at 9423 Main Street, Manassas, VA 20110.   Thousand Oaks is engaged in the manufacture, distribution, and sale of oak barrels for aging wine and distilled spirits, kits to age and flavor distilled spirits in oak barrels, decor made from oak barrels, and decorative signs in the United States directly and/or through its resellers.

3.      Defendant Deep South Barrels LLC (hereinafter "Deep South"), upon information and belief, is a corporation organized under the laws of the state of Texas, with an address of 9900 Spectrum Drive, Austin, TX 78717.

2

4.      Defendant Man Cave Gifts (hereinafter "Man Cave"), upon information and belief, is a company organized and/or operating under the laws of the state of Texas, with a mailing address of 1779 Well Branch Pkwy, #110B-275, Austin, Texas 78728.

5.      Defendant Red Head Barrels LLC Defendant (hereinafter "Red Head"), upon information and belief, is a corporation organized under the laws of the state of Texas, with an address of 409 Rutherford Ave, Wylie, TX 75098.

6.      Defendant Three Gingers Holdings LLC, d/b/a Longhorn Barrels, (hereinafter "Longhorn"), upon information and belief, is a company organized under the laws of the state of Texas, with an address of 6710 Virginia Parkway, Suite 215-314, McKinney, TX  75071.

7.      Defendant American Oak Barrel LLC (hereinafter "American Oak"), upon information and belief, is a company organized under the laws of the state of Maryland, with an address at 6711 Ritchie Highway, Glen Burnie, MD 21061.

8.      Defendant Craftsman Barrel Company and its predecessor-in-interest, Mandar, Inc. (hereinafter "Craftsman"), upon information and belief, is a company organized under the laws of Michigan, with an address at 3333 Winchester Rd., Bloomfield, MI  48322.

9.      Defendant Wood Harbour, upon information and belief, is doing business as Renaissance Barrel (hereinafter "Wood Harbour"), upon information and believe, is a company organized under the laws of the State of Texas with an address of 21778 FM 1774, Plantersville, TX 77363.

10.     Defendant Texas Renaissance Festival Inc., (hereinafter "Texas Festival"), upon information and belief, is a corporation organized under the laws of the State of Texas, with an address of 21778 FM 1774, Plantersville, TX 77363 and owns and operates the Texas Renaissance Festival in Todd Mission, Texas.

11.     Defendant Southwest Festivals, Inc., (hereinafter "Southwest"), upon information and belief, is a corporation organized under the laws of the State of Texas, with an address of Rte. 5, FM 66, Waxahachie, TX, 75165, and owns and operates the Scarborough Renaissance Festival in Waxahachie, Texas.

12.     Defendant Arizona Renaissance Festival (hereinafter "Arizona Festival"), upon information and belief, is a corporation organized under the laws of the of Arizona, with an address of 12601 US-60, Gold Canyon, AZ, 85118, and owns and operates the Arizona Renaissance Festival in Gold Canyon, Arizona.

13.     Thousand Oaks, upon information and belief, alleges that Defendants conduct business in interstate commerce in the United States and/or the Commonwealth of Virginia, and in this District; that the claims alleged herein arise from Defendant's acts or omissions in the United States, the Commonwealth of Virginia and in this District; that Defendant has purposefully directed their activities to residents in the United States, the Commonwealth of Virginia and in this District; and that Defendants' acts or omissions have damaged Thousand Oaks and its property in the United States, the Commonwealth of Virginia and in this District.

## JURISDICTION AND VENUE

14.     This civil action arises under the laws of the United States and this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the action arises under the U.S. Copyright Act of 1976 (17 U.S.C. §§101 *et seq.*), 15 U.S.C. § 1051, *et seq.* (trademark actions arising under the Lanham Act), and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks and copyrights), and 28 U.S.C. § 1332(a) (diversity of citizenship). This action additionally asserts state statutory and common law claims for unfair and deceptive trade practices, dilution, trademark infringement and unfair competition joined with substantial and

4

related claims under the federal trademark laws and this Court has jurisdiction as to such claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) (supplemental jurisdiction over State claims).

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because the acts complained of occurred and are occurring in the United States and in this District, Defendants are doing business in this District, and have caused damage to Plaintiff in the United States and in this District.

## THOUSAND OAKS' INTELLECTUAL PROPERTY ASSETS AND PRODUCTS

16.     This is a story of one man's success in building a company and new market with his own innovative products and creations in a true entrepreneur's spirit, and a group of former associates who, instead of competing fairly in the marketplace, literally made businesses out of wrongfully and egregiously copying those innovative products and creations.

17.     In 1999, Mr. Bryan Weisberg, owner and manager of Thousand Oaks and the Plaintiff's predecessor-in-interest, began investigating how he could create a miniaturized version of a full-sized 53 gallon bourbon barrel.  Mr. Weisberg believed that such a smaller barrel that was made just as well as the bourbon barrels used by distilleries could be used by individuals at home to age and flavor their own store-bought wine and distilled spirits in a similar manner that wineries and the large distilleries age alcohol.  Not being familiar with barrel-making, Mr. Weisberg spent considerable time and resources meeting with distillers, wineries, and barrel manufacturers in California, Virginia, Kentucky, Tennessee, and the surrounding states.  He wanted to understand the end-to-end aspects of, and best practices for, creating quality bourbon barrels including where to source the proper American White Oak wood (which is required by law to use for bourbon barrels), how to char (burn) the interior of the barrel, and to how to clean and sterilize barrels between uses.

5

18.     Because of Mr. Weisberg's persistence and dedication, in 2003 Thousand Oaks manufactured the first commercially-available personal sized barrel for sale that meets the qualifications for aging the highest quality bourbon spirits: the barrel is manufactured with new American White Oak wood that has been aged for two years, and the barrel must be internally charred within a specific range of charring. Weisberg spent his own time, money, and resources to build and open a manufacturing and warehouse facility in Manassas, Virginia and to locate and partner with a manufacturing facility in northern Mexico. Weisberg created the website <www.1000oaksbarrel.com> in 2003 to advertise and sell 1L, 2L, 3L, 5L, and 10L oak barrels over the Internet. At the same time, Weisberg setup a vendor booth as Thousand Oaks at many outdoor festivals and events in the mid-Atlantic region where he would sell oak barrels directly to consumers.

19.     Through his own research and experimentation, in 2003 Weisberg concluded that alcohol spirits aged in a smaller oak barrel would "age" faster than the same spirit in a standard-sized 53 gallon oak barrel. Weisberg theorized that the greater surface area of the barrel with which the spirit could contact would actually cause the alcohol to take on the flavors from the wood at a faster rate. After publishing this theory on the Thousand Oak's website, Weisberg received universal condemnation from distillers, barrel makers, and even some of his own customers. However, in 2012, the Independent Stave Company, the world's largest manufacturer of bourbon barrels, performed an independent study that concluded, with as much scientific accuracy as possible, that smaller bourbon barrels do "age" spirits at a faster rate than larger barrels. The reason was due to the greater surface area of the smaller barrel that was in contact with the smaller quantity of spirits, which is the same conclusion Weisberg discovered near a decade prior.

6

20.     Weisberg's catalog of graphical images and templates included templates from which customers could choose and customize with their own names and information. **Figure 1** is an example of a "personalized" 2-liter oak barrel manufactured by Thousand Oaks. The graphic is referred to as the "P5 Design" at Thousand Oaks.

**Figure 1**
Source: <www.1000oaksbarrel.com>



21.     Mr. Weisberg's innovation of a personalized mini oak barrel has been a huge commercial success, selling hundreds of thousands of barrels through national retailers such as Wine Enthusiast and Hammacher Schlemmer, and many other national partners and distributors. Thousand Oaks currently sells over 100,000 oak barrels per year throughout the United States and in this District.

22.     Thousand Oaks offers other lines of home and commercial products and decor for wineries, distilleries, and home bars including barrel head signs, furniture from oak barrels, Lazy Susan's, serving trays, and stylized wood and metal signs.

23.     In 2014, Thousand Oaks acquire the intellectual property assets and manufacturing know-how of a signage company named Davis and Small ("D&S"). D&S created

7

and manufactured fanciful 19th century styled signs for home or commercial bars. Many of the signs could be personalized with a customer's name, and Mr. Weisberg believed the D&S products could complement Thousand Oaks product lines.

24. In true entrepreneurial spirit, Mr. Weisberg created a number of other original and innovative product lines out of mini oak barrels. His most successful is the distilled spirits aging and flavoring product that Weisberg named the "BOOTLET KIT." Other innovative products created, manufactured and sold by Thousand Oaks are the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug. These and other original creations currently sold by Thousand Oaks are discussed more fully below in relation to Thousand Oaks' intellectual property rights.

## THE THOUSAND OAKS COPYRIGHTS

25. After many years of providing high-quality oak barrels to retail consumers and distilleries, Weisberg wanted to create a more personalized barrel for consumers to take home and enjoy. In doing so, between 2008 and 2011, Weisberg authored and developed a catalog of graphics and lettering designs for Thousand Oaks barrels. These graphics and designs allow for custom selections and personalization when a customer orders a Thousand Oaks barrel. Due to the high cost of laser engraving machines at the time, Weisberg purchased and began using vinyl lettering secured onto barrel heads. These designs quickly became popular, and Thousand Oaks was eventually able to purchase an expensive laser engraving machine that can burn lettering and graphics onto a barrel head. Thousand Oaks was the first company to offer this kind of customized small oak barrel.

26. Over the years, Weisberg expanded the Thousand Oaks' Website by authoring guidance and instructions on the care and maintenance of the Thousand Oaks' oak barrels. He

8

also created other new products areas based on the Thousand Oaks barrel.  In 2014, Thousand Oaks acquired the intellectual property and product lines of popular 30-year old sign company in South Carolina named Davis and Small (hereinafter "D&S").  D&S specialized in creating personalized designs (as does Thousand Oaks) and is generally known as the founder of the mass market personalized sign business.

27.      The Thousand Oaks' Website content, the unique products created by Weisberg, and the D&S signage are protected by trademarks and copyrights.

28.      Thousand Oaks owns the following copyright works in paragraphs 29-44.

29.      A collection of Thousand Oaks' 2008 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823846.  (See **Exhibit A).**

30.      A collection of Thousand Oaks 2010 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823982.  (See **Exhibit B).**

31.      A collection of Thousand Oaks 2011 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893824048.  (See **Exhibit C).**

32.      A collection of Thousand Oaks 2003 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568341. (See **Exhibit D**).

33.      A collection of Thousand Oaks 2008 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823596. (See **Exhibit E**).

9

34.     A collection of Thousand Oaks 2010 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568847. (See **Exhibit F**).

35.     A collection of Thousand Oaks 2014 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823680. (See **Exhibit G**).

36.     The Thousand Oaks "P5 Design" barrel graphic design was deposited for copyright registration and assigned case Serial No. 1-3806696071.  (See **Exhibit H**).

37.     The Thousand Oaks' "WEWhiskey" barrel graphic design was deposited for copyright registration and assigned case Serial No. 1-3893823781.  (See **Exhibit I**).

38.     The Thousand Oaks 2014 product catalog was deposited for copyright registration and assigned case Serial No. 1-3806240001.  (See **Exhibit J**).

39.     The Thousand Oaks 2016 product catalog was deposited for copyright registration and assigned case Serial No. 1-3806314352.  (See **Exhibit K**).

40.     A Thousand Oaks 2006 product label for the "Bootleg Kit" was deposited for copyright registration and assigned case Serial No. 1-3893853441.  (See **Exhibit L**).

41.     A Thousand Oaks 2011 product card for the "Bootleg Kit" was deposited for copyright registration and assigned case Serial No. 1-3893853507.  (See **Exhibit M**).

42.     The Davis and Small 1995 Signage catalog was deposited for copyright registration and assigned copyright registration No. Tx-5-341-504.  (See **Exhibit N**).

43.     The Davis and Small 2000 Signage catalog was deposited for copyright registration and assigned copyright registration No. Txu-812-629.  (See **Exhibit O**).

44.     A collection of Davis and Small signage was deposited for copyright registration and case Serial No. 1-3893823481.  (See **Exhibit P**).

45.     The Thousand Oaks trademark BOOTLEG KIT was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No. 87122053.  (See **Exhibit Q**).

46.     The Thousand Oaks trademark CIGAR INFUSION BARREL was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No. 87122053.  (See **Exhibit R**).

47.     The Thousand Oaks trademark WEDDING BARREL was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No.87128101.  (See **Exhibit S**).

48.     The Thousand Oaks trademark THOUSAND OAKS BARREL was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No.87133459.  (See **Exhibit T**).

49.     A Thousand Oaks 2010 label for the BOOTLEG KIT was deposited for copyright registration and assigned case Serial No. 1-3899999741 (See **Exhibit JJ**).

### **THE THOUSAND OAKS BARREL HEAD GRAPHICS**

50.     Thousand Oaks maintains a catalogue of graphics, created by Weisberg, that customers can choose to have engraved on and end of a barrel, called the barrel "head."

51.     Mr. Weisberg's background is in graphic design and software development, where he was integral in developing the first computer based pre-press trapping and impositions applications for the printing.  In addition, Weisberg developed the first commercially-available mixed media CD (i.e., CD-ROM with interactive data on it) and over eighteen full-length

11

consumer software products published by some of the largest software publishers of the day.  As the Internet exploded, Weisberg focused his efforts in Ecommerce platform development and designed and developed Ecommerce sites for such national brands such as the PGA tour, model Cindy Crawford, and Sears Roebuck, Inc.

52.     The barrel head graphic designs were created by Weisberg for Thousand Oaks using Weisberg's knowledge and skill as a graphical designer.

53.     Popular graphics with Thousand Oaks customers are ones that could be customized with a customer's name and a fictitious "distillery" with the customer's name as the distillery name.  Examples of such customizable graphics are included in **Figure 2**.

**Figure 2**
Source: Thousand Oaks Barrel Graphic Designs

| "P5 Design" barrel graphic<br>Copyright Serial No. 1-3806696071 | WEWhiskey" barrel graphic<br>Copyright Serial No. 1-3893823781 |
|---|---|
|  | |

54.     The Thousand Oaks barrel head graphic designs have been submitted in copyright applications to the U.S. Copyright Office.  (See, e.g., Exhibits A, B, C, H, I, J, K).

## THE THOUSAND OAKS WEBSITE

55.      Thousand Oaks created, owns, and operates the E-commerce website <www.1000oaksbarrel.com> (hereinafter "Website").  The Website offers a vast selection of hundreds of high-quality oak barrel products, decor derived from oak barrels or natural wood, signage, and other accessories for the wine and distilled spirits industry and consumers.

56.      Thousand Oaks has an extensive investment in the content of its Website.  Since its creation in 2003, Thousand Oaks has updated its Website to feature new product offerings and the Thousand Oaks' graphic designs.  The Website also contains descriptions for products, answers to frequently asked questions ("FAQs"), and instructions for the care and use of oak barrels.  Thousand Oaks spent considerable time writing these descriptions, answers to FAQs, and instructions.  The purpose of the Website is to give Thousand Oaks' customers an extensive resource for dependable and factual content regarding Thousand Oaks' products.

## THE THOUSAND OAKS TRADEMARKS

### A.    *The BOOTLEG KIT Trademark*

57.      Thousand Oaks has used, in Virginia and in interstate commerce, the trademark BOOTLEG KIT at least as early as 2006 to identify its company and/or predecessor-in-interest as the source of a unique product line for consumers.  The BOOTLEG KIT includes an authentic small-sized bourbon barrel, a flavoring essence, and instructions for aging and flavoring a distilled spirit.  Thousand Oaks sells the BOOTLEG KIT to retail customers via the Website, direct to customers via festivals and events, and through wholesale partners throughout the United States.  An example of an image for a product card and a box label for the BOOTLEG KIT is illustrated below in **Figure 3**. (**See, e.g., Exhibit L**).

**Figure 3**
Source: <www.1000oaksbarrel.com>, 2007.

13



58.     Since its first advertisement, offer, and sale of the BOOTLEG KIT in 2006, Thousand Oaks has continuously used the BOOTLEG KIT mark, which Thousand Oaks has prominently displayed in advertising and marketing of its products as a trade name and product brand in print advertisements and brochures, on multiple websites on the Internet, and other promotional and marketing materials.

59.     Thousand Oaks created, owns, and maintains the Internet website <www.swishbarrel.com> that was specially created in 2007 to advertise, market and sell the BOOTLEG KIT product. Thousand Oaks also created, owns, and maintains the Internet website <www.bootlegkit.com> that was specially created in 2016 to advertise, market and sell the BOOTLEG KIT product.

60.     The BOOTLEG KIT product has been a huge commercial success, selling hundreds of thousands of Bootleg Kits at national and international retailers such as Wine Enthusiast and by national partners across the United States. The commercial success of the BOOTLEG KIT has resulted in widespread recognition of the product and Thousand Oaks is recognized as the source of the BOOTLEG KIT.

14

61.     Competitors to Thousand Oaks have unlawfully copied the BOOTLEG KIT product and trademark and used the same, or confusingly similar versions of, the BOOTLEG KIT trademark, reinforcing the trademark's recognized commercial success.

62.     Thousand Oaks has acquired strong common law trademark rights in its BOOTLEG KIT mark through extensive use in Virginia and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

63.     As a result of Thousand Oaks' efforts, the quality of its Bootleg Kit Product, and its promotions, and word of mouth buzz, Thousand Oaks' BOOTLEG KIT Mark has become prominently placed in the minds of the public. Members of the public have become familiar with Thousand Oaks' BOOTLEG KIT Mark, and have come to recognize the Mark and Product and associate them exclusively with Thousand Oaks. Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

64.     Thousand Oaks, through its counsel, submitted its BOOTLEG KIT mark for registration at the U.S. Patent and Trademark Office and claimed first evidence of use 15 U.S.C. § 1051(a) as of at least December 2, 2006. The application is current pending. (See Exhibit Q).

65.     Thousand Oaks' BOOTLEG KIT mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising for nearly a decade. Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

66.     By using Thousand Oaks' mark BOOTLEG KIT for approximately a decade in interstate commerce and Virginia commerce, Thousand Oaks has developed significant and

valuable goodwill in its mark in the industry and with the public, has also acquired secondary meaning.

**B.** ***The CIGAR INFUSION BARREL Trademark***

67.     Thousand Oaks has used, in Virginia and in interstate commerce, the trademark CIGAR INFUSION BARREL at least as early as April 30, 2007 to identify its company and/or predecessor-in-interest as the source of a unique product line for consumers featuring an oak barrel specially constructed for holding and flavoring tobacco, such as cigars and loose tobacco. Thousand Oaks sells the CIGAR INFUSION BARREL to retail customers via the Website, direct to customers via festivals and events, and through wholesale partners throughout the United States.   An example of an image for a product card and a box label for the CIGAR INFUSION BARREL is illustrated below in **Figure 4**.

**Figure 4**
Source: <www.1000oaksbarrel.com>



68.     Since its first advertisement and sale of the CIGAR INFUSION BARREL in 2007, Thousand Oaks has continuously used the CIGAR INFUSION BARREL mark, which it has prominently displayed in advertising and marketing of its products as a trade name and product brand in print advertisements and brochures, on <www.1000oaksbarrel.com> on the Internet, and other promotional and marketing materials.

16

69.     The CIGAR INFUSION BARREL product has been a huge commercial success, selling tens of thousands of Cigar Infusion Barrels at national retailers and national by partners across the United States.  The commercial success of the CIGAR INFUSION BARREL has resulted in widespread customer recognition of the product and Thousand Oaks is recognized as the source of the CIGAR INFUSION BARREL.

70.     Competitors to Thousand Oaks have unlawfully copied the CIGAR INFUSION BARREL product and trademark, or confusingly similar versions of the trademark, thereby reinforcing the trademark's recognized commercial success.

71.     Thousand Oaks has acquired strong common law trademark rights in its CIGAR INFUSION BARREL mark through extensive use in Virginia and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

72.     As a result of Thousand Oaks' efforts, the quality of its Cigar Infusion Barrel Product, and its promotions, and word of mouth buzz, Thousand Oaks' CIGAR INFUSION BARREL Mark has become prominently placed in the minds of the public.  Members of the public have become familiar with Thousand Oaks' CIGAR INFUSION BARREL Mark, and have come to recognize the Mark and Product and associate them exclusively with Thousand Oaks.  Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

73.     Thousand Oaks, through its counsel, submitted its CIGAR INFUSION BARREL mark for registration at the U.S. Patent and Trademark Office. (See Exhibit R).  Thousand Oaks claimed first evidence of use under 15 U.S.C. § 1051(a)  as of at least December 2, 2006. The application is current pending.

74.     Thousand Oaks' CIGAR INFUSION BARREL mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising for a decade. Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

75.     By using Thousand Oaks' CIGAR INFUSION BARREL mark for over nine years in interstate commerce and Virginia commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, has also acquired secondary meaning.

### D.     The WEDDING BARREL Trademark

76.     Thousand Oaks has used, in Virginia and in interstate commerce, the trademark WEDDING BARREL at least as early as September 5, 2009 to identify its company and/or business as the source of a unique product line for consumers featuring an oak barrel specially constructed for holding Wedding Cards and paper or other gifts.   Thousand Oaks sells the WEDDING BARREL to retail customers via the Website, direct to customers via festivals and events, and through wholesale partners throughout the United States.    An example of an image for a product card and a box label for the WEDDING BARREL is illustrated below in **Figure 5**.

18

**Figure 5**
Source: <www.1000oaksbarrel.com>



'Classic' Wedding Barrel™ Card Holder
(B506)

77.     Since its first advertisement and sale of the WEDDING BARREL in 2009, Thousand Oaks has continuously used the WEDDING BARREL mark, which it has prominently displayed in advertising and marketing of its products as a trade name and product brand in print advertisements and brochures, on <www.1000oaksbarrel.com> on the Internet, and other promotional and marketing materials.

78.     The WEDDING BARREL product has been a huge commercial success, selling tens of thousands of Cigar Infusion Barrels at national retailers and national by partners across the United States.   The commercial success of the WEDDING BARREL has resulted in widespread customer recognition of the product and Thousand Oaks is recognized as the source of the WEDDING BARREL.   Competitors to Thousand Oaks have unlawfully copied the WEDDING BARREL product and trademark and used substantially similar versions of the trademark, thereby reinforcing the trademark's recognized commercial success.

19

79.     Thousand Oaks has acquired strong common law trademark rights in its WEDDING BARREL mark through extensive use in Virginia and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

80.     As a result of Thousand Oaks' efforts, the quality of its Wedding Barrel Product, and its promotions, and word of mouth buzz, Thousand Oaks' WEDDING BARREL Mark has become prominently placed in the minds of the public.  Members of the public have become familiar with Thousand Oaks' WEDDING BARREL Mark, and have come to recognize the Mark and Product and associate them exclusively with Thousand Oaks.  Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

81.     Thousand Oaks, through its counsel, submitted its WEDDING BARREL Mark for registration at the U.S. Patent and Trademark Office. (See Exhibit S). Thousand Oaks claimed first evidence of use under 15 U.S.C. § 1051(a) as of at least September 5, 2009.  The application is current pending.

82.     Thousand Oaks' WEDDING BARREL mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising for a decade.  Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

83.     By using Thousand Oaks' WEDDING BARREL mark for approximately a decade in interstate commerce and Virginia commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, has also acquired secondary meaning.

### E.     The *TOP SHELF TASTE AT A BOTTOM BARREL PRICE* Trademark

84.     Thousand Oaks has used, in Virginia and in interstate commerce, the trademark phrase TOP SHELF TASTE AT A BOTTOM BARREL PRICE as a slogan or tagline for the BOOTLEG KIT at least as early as December, 2006 to identify its company and/or predecessor-in-interest as the source of the BOOTLEG KIT via the Website and printed advertisements to retail and wholesale customers throughout the nation.  (See **Exhibit M, Figure 6**).

**Figure 6**
Source: Thousand Oaks Barrel 2011 Product Card



85.     Since its first advertisement and sale of the BOOTLEG KIT in 2006, Thousand Oaks has used the tagline TOP SHELF TASTE AT A BOTTOM BARREL PRICE, which it has prominently displayed in advertising and marketing of its BOOTLET KIT, as a tagline to for the trade name and product brand, in print advertisements and brochures, on multiple websites on the Internet, and other promotional and marketing materials.

86.     The mark TOP SHELF TASTE AT A BOTTOM BARREL PRICE has become synonymous with the BOOTLEG KIT product as a whole, reflecting the Plaintiff's products and values.

21

87. Thousand Oaks has acquired strong common law trademark rights in its TOP SHELF TASTE AT A BOTTOM BARREL PRICE mark through extensive use in Virginia and in interstate commerce in connection with Plaintiff's business activities in multiple states within the United States.

88. Thousand Oaks' TOP SHELF TASTE AT A BOTTOM BARREL PRICE mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Thousand Oak's extensive use, sales, marketing, and advertising for a decade. Thousand Oak's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

89. As a result of Thousand Oaks' efforts, the quality of its Bootleg Kit Product, and its promotions, and word of mouth buzz, Thousand Oaks' TOP SHELF TASTE AT A BOTTOM BARREL PRICE Mark has become prominently placed in the minds of the public. Members of the public have become familiar with Thousand Oaks' TOP SHELF TASTE AT A BOTTOM BARREL PRICE Mark, and have come to recognize the Mark and Product and associate them exclusively with Thousand Oaks. Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

90. By using Plaintiff's TOP SHELF TASTE AT A BOTTOM BARREL PRICE mark for over a decade in interstate commerce and Virginia commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, has also acquired secondary meaning.

**F.** *The THOUSAND OAKS BARREL Trademark*

22

91.     Thousand Oaks has used, in Virginia and in interstate commerce, the trademark THOUSAND OAKS BARREL at least as early as 2003 to identify its company and/or predecessor-in-interest as the source of unique product lines for consumers including personalized small oak barrels, oak barrel accelerating aging and flavoring kits, wine and bar products manufactured from wood, and personalized signs.   Thousand Oaks sells THOUSAND OAKS BARREL products to retail customers via the Website, direct to customers via festivals and events, and through wholesale partners throughout the United States.  An example of the Thousand Oaks' 2003 Website advertising oak aging barrels for sale under the Thousand Oaks Barrel mark is illustrated below in **Figure 7**. (**See Exhibit D**).

**Figure 7**
Source: <www.1000oaksbarrel.com>



92.     Since its first advertisement and sale of the "Oak Barrels for Aging Wine, Tequila, Brandy and Cognac" in 2003, Thousand Oaks has continuously used the THOUSAND OAKS BARREL mark, which it has prominently displayed in advertising and marketing of its

products as a trade name and product brand in print advertisements and brochures, on multiple websites on the Internet, and other promotional and marketing materials.

93.    The THOUSAND OAKS BARREL oak barrel product lines have been a huge commercial success, selling hundreds of thousands of oak barrels at national retailers such as Wine Enthusiast and national by partners across the United States.  The commercial success of the THOUSAND OAKS BARREL oak barrels has resulted in widespread customer recognition of the products and Thousand Oaks is recognized as the source of the oak barrels designed for home aging and flavoring of alcoholic spirits and wine.

94.    Competitors to Thousand Oaks have unlawfully copied the THOUSAND OAKS BARREL products and mark and used substantially similar versions of the mark, reinforcing the trademark's recognized commercial success.

95.    Thousand Oaks has acquired strong common law trademark rights in its THOUSAND OAKS BARREL mark through extensive use in Virginia and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

96.    As a result of Thousand Oaks' efforts, the quality of its Bootleg Kit Product, and its promotions, and word of mouth buzz, Thousand Oaks' THOUSAND OAKS BARREL Mark has become prominently placed in the minds of the public.  Members of the public have become familiar with the THOUSAND OAKS BARREL Mark, and have come to recognize the Mark and Product and associate them exclusively with Thousand Oaks.  Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

97.    Thousand Oaks, through its counsel, submitted its THOUSAND OAKS BARREL mark for registration at the U.S. Patent and Trademark Office and claimed first

24

evidence of use 15 U.S.C. § 1051(a) as of at least 2003. The application is current pending. (See Exhibit T).

98.     The THOUSAND OAKS BARREL mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising for a decade. Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

99.     By using THOUSAND OAKS BARREL for since 2003 in interstate commerce and Virginia commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, has also acquired secondary meaning.

## THE THOUSAND OAKS BARREL INSTRUCTIONS

### *The Your New Barrel Card*

100.     Thousand Oaks includes a card with product instructions and answers to Frequently Asked Questions with each order of the BOOTLEG KIT. The contents of the Your New Barrel card were authored by Thousand Oaks and are intended to provide customers with accurate and helpful information since most customers have never aged spirits in an oak barrel before.

101.     The Thousand Oaks Bootleg Kit card was deposited for copyright registration. (See Exhibit M).

### *The Cleaning Kit*

102.     Thousand Oaks' Cleaning Kit includes a card with product instructions and answers to how to clean or sterilize a Thousand Oaks' oak barrel. The contents of the Cleaning

Kit card were authored by Weisberg for Thousand Oaks and are intended to provide its customers with accurate and helpful information since most customers have never cleaned or sterilized an oak barrel before. Some of the language on the card dates back to 2003, where instructions were placed on the first publication of Thousand Oaks' Website. By 2008, Weisberg's own trial-and-error work cleaning and sterilizing oak barrels caused Weisberg to update the Cleaning Kit instructions on the Thousand Oaks' website, which became longer and more detailed. A typed copy of the 2008 Cleaning Kit instructions is included in Exhibit U.

## CERTAIN THOUSAND OAKS PRODUCTS

### A.    *The Bootleg Kit*

103.    The Thousand Oaks Bootleg Kit product was created, designed, and developed by Weisberg starting in 2005. By 2006, Thousand Oaks was advertising and selling the Bootleg Kit on the Thousand Oaks' website, direct retail sales, and to wholesale partners nationwide. It was, and remains, Thousand Oaks' most successful product. (**See Figure 8**).

**Figure 8**
Source: <www.1000oaksbarrel.com>

104.    In early 2006, Mr. Weisberg found an article on the internet describing the underground spirit market during the days of prohibition. He learned that during those days not all distilleries where shut down and that not all moonshiners where equal in the quality of their product. Thousands of barrels of spirit had been hidden away from the law and sold on the underground market and in Speak Easy's for top dollar. To get the highest price for their moonshine, crafty moonshiners would make their shine look and taste like the known brands of the day. They would flavor their moonshine and sell it as a premium spirit to get the highest price.

105.    Mr. Weisberg had the idea to create a product that would recreate the scandalous nature of past moonshine activities. Being a "Do it yourself" kind of person and a spirit enthusiast, he created the Bootleg Kit. He found a flavoring company in Canada and worked together to produce flavors that mimicked the tastes of known styles of spirit i.e. Bourbon, Rum and Scotch. These flavorings and the fact that the small oak barrels he produces will age your spirits 10x faster than commercial sized barrels made the perfect foundation for a great new product for spirit lovers. Flavor and age spirits in an oak barrel just like the "Bootleggers". In addition, Mr. Weisberg reformulated the chemicals required to clean and prepare your barrel for aging. This became the Swish Barrel Cleaning Kit, pre-formulated packets of chemicals for cleaning small oak barrels. These pre-formulated packets where required since prior to this, chemicals where only available in commercial quantities and have a short shelf life.

106.    The Thousand Oaks Bootleg Kit product was created, designed, developed, and manufactured by Thousand Oaks, beginning in 2006, through the expenditure of significant time, labor, skill and money.

27

107.    Over the course of the next two years, Mr. Weisberg and his flavoring supplier created 38 different flavors. Mr. Weisberg personally produced all the art, wrote consumer instructions and oversaw the complete production of the product development. He launched the Bootleg kit in Oct 2006 and it has been hugely successfully, selling as product online, through distributors and at wine and beer festivals.

### B.    The Cigar Infusion Barrel

108.    The Cigar Infusion Barrel product was created, designed, developed, and manufactured by Thousand Oaks in 2007 through the expenditure of significant time, labor, skill and money. (**See Figure 9**).

**Figure 9**
Source: <www.1000oaksbarrel.com>



109.    On or about late 2006, Mr. Weisberg was attending a wine festival in Virginia to advertise and sell Thousand Oaks' wood oak barrels and other products. At the time, Mr. Weisberg was also offering hand-made cigars as an accompanying product to the customers interested in aging distilled spirits in wood oak barrels. Mr. Weisberg was told a story by a

customer at the event of how Christopher Columbus brought tobacco leaves from the New World back to Europe in empty rum barrels and that upon smoking the tobacco they realized the flavor had been infused in the tobacco due to the time in the rum barrel. This gave Mr. Weisberg the idea that perhaps cigars, being merely wrapped tobacco leaves, could be enhanced in flavor after being stored and "infused" in a Thousand Oaks' charred oak mini-barrel.

110.    Mr. Weisberg researched how flavored tobacco was manufactured and realized that they were merely spraying a flavoring on the tobacco and not actually infusing the flavor into the tobacco. Mr. Weisberg believed he was on to something and decided to perform an experiment with this idea. He gathered three mini-barrels that had separately aged rum, whiskey, and bourbon and cut holes in the head to could fit his arm and cigars through. He fashioned lids for the hole from the cut pieces and filled each of the pre-soaked spirit barrels with cigars to let the cigars "age and become infused". Within a few days Mr. Weisberg smoked one of his infused cigars and sure enough the flavor was transferred to the cigar. Unfortunately the experiment was not finished.

111.    Over a number of weeks, Mr. Weisberg realized that the cigars in the barrel would dry out over time and that the Cigar Infusion Barrel required a way to keep the cigars fresh. After performing significant research and testing, he found an elegant solution in a product called a water pillow, which he renamed a Tobacco Tiddi. The Tobacco Tiddi is a dried crystal that, when in contact with water, expands and holds the liquid for many weeks. When placed inside the Cigar Infusion Barrel, the tobacco Tiddi provides 6 to 10 weeks of perfect humidity for cigars.

112.    This ingenuity, hard work and dedication to his creative idea turned into the Thousand Oaks' Cigar Infusion Barrel. By January 2007, Thousand Oaks began production of

29

the first Cigar Infusion Barrel for commercial sale in the United States beginning in April, 2007, and it quickly became a commercial success, which continues to present day.

### C.    *The Wedding Barrel*

113.    The Wedding Barrel product was created, designed, developed, and manufactured by Thousand Oaks in 2010 through the expenditure of significant time, labor, skill and money.  (**See Figure 10**).

**Figure 10**
Source: <www.1000oaksbarrel.com>



114.    Since 2005, Mr. Weisberg was marketing his company at Wine and Beer festivals throughout the East Coast. He noticed that many people were buying small barrels as a groomsman gift. Simultaneously, Mr. Weisberg became aware of the fact that many wineries in the region have staff wedding planners and have weddings on a regular basis at their wineries.

115.    In the summer of 2008, Tarara Vineyards asked Mr. Weisberg if he would rent some small barrels for a wedding they were having at the winery. The wedding couple asked for small barrels for the tables of which he agreed to deliver on the wedding date. Upon delivering the barrels he overheard the couple soon to be married ask where guests can put their cards. That sparked the idea for the Wedding Barrel.

116.    Mr. Weisberg immediately went to work designing a barrel to hold gift cards and be able to be personalized with the wedding couples name and wedding date. He realized he needed to make a trap door and a way to make a card hole in the barrel without destroying the integrity of the barrel. After numerous revisions and thousands of dollars, the Wedding Barrel was born. The product was officially launched online in September, 2009 and is one of Thousand Oaks' best-selling products. The Thousand Oaks Wedding Barrels have been a huge commercial success and have been sold in the United States and internationally, and are now in numerous internationally known catalogs.

### D.    *The Oak Barrel Mug*

117.    The Oak Barrel Mug product was created, designed, developed, and manufactured by Thousand Oaks in 2007 through the expenditure of significant time, labor, skill and money.  (**See Figure 11**).

**Figure 11**
Source: <www.1000oaksbarrel.com>



118.    On or about 2007, Thousand Oaks was awarded the opportunity to sell its wood oak barrels as a guest vendor at the Maryland Renaissance Festival.  Mr. Weisberg noticed that many of the Renaissance Festival staff had period style beer mugs attached to their costume belts. The staff would unhook their mugs from their belts and order a beer which was served in

their personal mug. Mr. Weisberg noticed this and in true entrepreneurial form, recognized the opportunity and was inspired to create a new product line.

119.  The following week Mr. Weisberg created and designed the Oak Barrel Mug. To create a prototype, he carefully selected and hand cut pieces of wood oak used in his barrels, and assembled the pieces with custom-cut metal bands to form the cup portion. Mr. Weisberg also created a wooden handle for the mug, and figured out how to attach the handle to the cup portion so that the handle would remain securely attached when the mug was full and being used. The prototype was a success, and Thousand Oaks began preparing the specially cut pieces of oak went into production for the following weekend. As expected, he offered the mug for sell and sold every one made. Nine years later, Oak Barrel Mugs are a staple at Renaissance Festivals throughout the U.S. and sold online through numerous catalogs and web sites.

### THE THOUSAND OAKS CONFIDENTIAL INFORMATION

120.  Thousand Oaks owns a database of supplier information, customer information, and other confidential business information that is kept on a secured corporate computer network. The network requires a user identification and password to access its contents.

121.  Thousand Oaks undertakes reasonable precautions to maintain its client and business information as confidential and grants access only to those authorized employees. Those employees are instructed that they are under an obligation of confidentiality not to disclose the confidential information on the network to anyone outside of Thousand Oaks.

122.  Thousand Oaks' confidential supplier list and customer list and other confidential business information are of substantial economic value to Thousand Oaks and provide Thousand Oaks with a competitive advantage in the marketplace.

32

## FACTS RELATED TO
## DEEP SOUTH'S WRONGFUL AND INFRINGING ACTIVITIES

123.    This action against Deep South arises out of Deep South's operation of a business owned by a former Thousand Oaks' employee who conjured up an entire business based on copying Thousand Oaks' intellectual property and innovative product lines, and from the beginning of its creation has methodically and wrongfully copied and continues to copy Thousand Oaks' intellectual property and such product lines.

124.    Upon information and belief, Defendant Deep South is a national supplier of oak barrel products in the United States and a direct competitor of Thousand Oaks. Deep South was formed in the state of Texas in 2010 by co-owners Mr. Randall Bentley, Mr. Jonathan Emmons, and Ms. Elissa Emmons. Attached as Exhibit V are copied pages from Deep South's website located at <www.deepsouthbarrels.com> describing its business. Deep South has sold, offered to sell, promoted, marketed and/or distributed their products across the United States, including in Virginia and in this District. Deep South markets, promotes, offers to sell, and sells its products through its website <www.deepsouthbarrels.com>, through other online storefronts such as Amazon.com, and promotes its products on social media sites including Facebook® and Twitter®.

125.    Instead of competing fairly by undertaking the extensive investment required to design new products and brands, Deep South copied Thousand Oaks' barrel engraving designs, trademarks, website content, and leading product lines to operate an entire business by unlawfully trading off of Thousand Oaks' valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Thousand Oaks.

126.    The history between Deep South and Thousand Oaks began in 2008, when Mr. Weisberg hired Mr. Bentley as an employee. Mr. Bentley had no prior experience in the barrel-

33

making or barrel promotion, or any other product lines or aspects of Thousand Oaks' business. Mr. Weisberg and Thousand Oaks employees trained Mr. Bentley to promote and sell Thousand Oaks' product lines at outdoor events such as fairs and festivals held in the region around Washington D.C., Maryland, and Virginia.

127.     As part of his duties, Mr. Bentley was required to sign a log sheet recording a number of pre-manufactured and/or assembled products (e.g., oak barrels and Bootleg Kits) that he would remove from the Manassas, Virginia facility and sell on-site at an event. Mr. Bentley was required to sign in the log sheet the unsold products and return the products to the facility. Mr. Bentley was paid the difference of the predetermined cost of the product to Thousand Oaks and the retail price sold to customers at the event. Bentley's expenses for travel to and from events were the responsibility of Mr. Bentley. Thousand Oaks would occasionally provide Bentley with a loan of money prior to an event that Bentley would use to pay for his expenses. As part of his duties, Mr. Bentley had access to Thousand Oaks' computer network. Thousand Oaks provided Mr. Bentley with a user I.D. and password so that he could log into the corporate network in order to log his sales transactions and submit internal requests to manufacture additional products for future events.

128.     Approximately a year later, in 2009, Mr. Bentley informed Mr. Weisberg that Bentley's father had died and he needed to visit Texas for the funeral. Approximately two or three days after this conversation, Mr. Bentley's wife and at least one other associate of Bentley called Mr. Weisberg inquiring into the whereabouts of Bentley, and informed Mr. Weisberg that Bentley had stored a significant number of Thousand Oaks barrels and other products at their homes.     Thousand Oaks was not aware of missing products during the course of Bentley's employment, however after inventorying the returned product and auditing the manufacturing

and sales figures, Thousand Oaks discovered approximately retail $10,000 worth of unaccounted-for product and front-loaded expense money over the time period of Bentley's employment. Thousand Oaks terminated Bentley's employment for cause in 2009, however Thousand Oaks did not know the whereabouts of Bentley to inform him of the termination.

129.    On or about 2010, Weisberg received communication from Thousand Oaks' barrel supplier partner in Mexico, that Bentley had contacted the partner about supplying Barrels to Bentley. The identity of the barrel supplier in Mexico was highly valuable, confidential information that gave Thousand Oaks a competitive advantage. Bentley could not have known the identity and telephone number of the barrel supplier without gaining the information from the secured Thousand Oaks computer network.

130.    On or about 2012, Weisberg was informed by the supplier for the Thousand Oaks Cleaning Kit, that Bentley had contacted the supplier about supplying similar cleaning kits to Deep South Barrels. Mr. Weisberg had worked directly and extensively with supplier to develop the Cleaning Kit as wells as to author proper instructions for cleaning, storing, and sterilizing oak barrels using the supplier's cleaning products. The identity of the Cleaning Kit supplier was highly valuable, confidential information that gave Thousand Oaks a competitive advantage. Bentley could not have known the identity of the Cleaning Kit supplier without gaining the information from the Thousand Oaks computer network.

131.    On or about the summer of 2014, Weisberg confronted Bentley during a trade show they were each attending in San Jose, CA. Weisberg spoke to Bentley stating, in part, that Bentley and Deep South were infringing Thousand Oaks' intellectual property rights and all of Bentley's and Deep South's activities must cease. Weisberg's wife was present during the conversation and heard the conversation.

*A. The Infringing Barrel Designs*

132.    Deep South advertised a barrel manufactured by Deep South, on its Facebook page. The caption under a photograph of the barrel states "Photos of Deep South Barrels." The photograph includes a "Deep South Barrels Cleaning Kit" adjacent the barrel. (*See, e.g.,* **Figure 12**).

**Figure 12**
Source:  Facebook website < hwww.facebook.com/DeepSouthBarrels/>, 7/8/2016



133.    Thousand Oaks owns collection of 2010 designs that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823982 (See **Exhibit B**), the P5 Design" barrel graphic design that was deposited for copyright registration and assigned case Serial No. 1-3806696071  (See **Exhibit H**), the Thousand Oaks 2014 product catalog that was deposited for copyright registration and assigned case Serial No. 1-3806240001 (See **Exhibit J**), and the Thousand Oaks 2016 product catalog that was deposited for copyright registration and assigned case Serial No. 1-3806314352 (See **Exhibit K**), each of claim the "P5 Design" (hereinafter the "P5 Copyrights").

134.     Upon information and belief, the Deep South barrel in **Figure 12** is a copy of the Thousand Oaks' barrel head graphic P5, and is the same as, or substantially similar to, and infringes upon, the copyrighted Thousand Oaks' P5 Copyrights.

135.     The copyrightable aspects of the P5 Design infringed by Deep South include a customer's name in an arced line of block lettering at the top, "Premium Barrel Aged" in smaller letters in another line, a name of a distilled spirit in larger block letters in another line, a separation line, a name of a customer's personalized "distillery" in cursive text, and a city and state in blocked letters in a another line.   (*See, e.g.,* **Figure 13**).

136.     The Deep South barrel incorporates the above-listed aspects of the Thousand Oak's P5 Copyrights.

**Figure 13**
Deep South Source: Facebook website < www.facebook.com/DeepSouthBarrels/>, 7/8/2016



| Thousand Oaks P5 Design | Deep South Design |
| --- | --- |

137.    Upon information and belief, Deep South also markets, advertises, manufactures, offers for sale, sells, and distributes oak barrels in the United States that use barrel head graphics the same as, or substantially similar to, the P5 Copyrights.

138.    The copyrightable aspects of  the P5 Design misappropriated by Deep South include a customer's name in an arced line of block lettering at the top, a separation line, a name of a customer's personalized "distillery", a city and state, and an "Est. (Date)" engraved into the barrel.  The Deep South barrel incorporates the above-listed aspects of the Thousand Oak's P5 Design.  (See, e.g., **Figure 14**).

**Figure 14**
Source:  Deep South website < www.deepsouthbarrels.com>, 7/15/2016



139.    Without authorization or permission from Thousand Oaks, Deep South through <www.deepsouthbarrels.com> is using the P5 Copyrights on the website <www.deepsouthbarrels.com>.

140.    Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the P5 Copyrights from Thousand Oaks without permission.  Thus, Thousand Oaks did not grant permission to Deep South to utilize any of its copyright works.

141.    By improperly utilizing Thousand Oaks' P5 Copyrights on its website and on goods manufactured, sold and/or distributed by Deep South, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

## B.    *The Infringing Website*

142.    Deep South's website <www.deepsouthbarrels.com> ("Infringing Website") was created by Deep South to compete head-to-head with Thousand Oaks' Website.

143.    Thousand Oaks owns a collection of Thousand Oaks 2003 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568341 (See **Exhibit D**), a collection of Thousand Oaks 2008 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823596 (See **Exhibit E**), a collection of Thousand Oaks 2010 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568847 (See **Exhibit F**), and a collection of Thousand Oaks 2014 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823680 (See **Exhibit G**), collectively the "Website Copyrights."

144.    Instead of competing fairly by undertaking the extensive investment required to author new content for a new website, Deep South carefully and methodically copied large chunks of Thousand Oaks' Website Copyrights over a multi-year period including instructions for a curing a new barrel, how to clean a barrel, Frequently Asked Questions section ("FAQ"), and product descriptions ("Copied Content").

145.    The Copied Content was included into the Infringing Website for promoting, advertising, accompanying, and/or selling competing goods in the same or related channels of commerce.

146.    The Copied Content, embodying in the Website Copyrights, was copied by Deep South and has been and/or is now also provided on the Infringing Website.  In many cases every word of the Copied Content is identical to the original works of authorship created by Thousand Oaks and in other cases large portions are taken and derived from Thousand Oaks' original works of authorship.  The tables in **Exhibit W** are illustrative of the aforesaid copying, and shows that the materials posted to the Infringing Website are substantially similar to the original works of authorship created by Thousand Oaks and claimed in the Website Copyrights.

147.    In one instance of many in **Exhibit W**, in 2008 Thousand Oaks wrote instructions for a question about a leaking barrel, "*I left my barrel dry for an extented [sic] time. Now it leaks... what do I do?  In many cases just re-cure the barrel.*"  Five years later Deep South wrote on the Infringing Website, "*I left my barrel dry for an extended time.  Now it leaks... what do I do?  You can try to re-cure the barrel. . . .*"

148.    Without authorization or permission from Thousand Oaks, Deep South through <www.deepsouthbarrels.com> is using the Website Copyrights on the website <www.deepsouthbarrels.com>.

40

149.    Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the Website Copyrights from Thousand Oaks without permission.    Thus, Thousand Oaks did not grant permission to Deep South to utilize any of its Website content or Website Copyrights.

150.    By improperly utilizing Thousand Oaks' Website Copyrights on <www.deepsouthbarrels.com>, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### C. The Infringing Product Instructions

151.    Upon information and belief, Deep South advertises, offers, sells, and distributes a "Deep South Barrels Cleaning Kit" as a barrel cleaning kit. (**See., e.g., Figure 15**).

**Figure 15**
Source:  Order Received From < www.deepsouthbarrels.com >



152.    Upon information and belief, since at least 2010 Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized certain product instructions written by Thousand Oaks for the Thousand Oaks' Cleaning Kit (the "Copied Instructions) and embodied in the Website Copyrights.

153.    Upon information and belief, Deep South wrongfully copied Thousand Oaks' Cleaning Kit instructions as instructions for the Deep South Cleaning Kit.  A comparison of the Deep South instructions with the Thousand Oaks' Website Copyrights Copied Instructions is included in the table in **Exhibit U**.

154.    Instead of competing fairly by undertaking the extensive investment required to author new content for a how to clean a barrel, Deep South carefully and methodically copied large chunks of Thousand Oaks' Website Copyrights, including at least the Copied Instructions from the Thousand Oaks' 2008 website embodied in copyright case Serial No. 1-3893823596. (See **Exhibit E**).

155.    The Copied Instructions was included into the Deep South Cleaning Kit for accompanying, and/or selling many of the competing goods in the same or similar channels of commerce.

156.    The Copied Instructions, originally authored by Thousand Oaks, was copied by Deep South and has been and/or is now also provided on the Deep South Website.  In many cases every word of the Copied Instructions is identical to the Website Copyrights and in other cases large portions are taken and derived from the Website Copyrights. The table in **Exhibit U** is illustrative of the aforesaid copying, and shows that the content of the Deep South Cleaning Kit, described above, is substantially similar to, and in many cases word-for-word as, the Website Copyrights.

157.    Without authorization or permission from Thousand Oaks, Deep South is using content from the Website Copyrights for the Deep South Cleaning Kit.

158.    Thousand Oaks did not grant permission to Deep South to utilize any of its Website Copyrights, including the Cleaning Instructions. Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the Cleaning Instructions from Thousand Oaks without permission.

159.    By improperly utilizing Thousand Oaks' Website Copyrights for the Deep South Cleaning Kit, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### D. The Infringing Trademarks

#### 1. BOOTLEG KIT

160.    Upon information and belief, since at least 2010, Deep South began using the mark "BOOTLEG BOX" and in 2013 changed the goods' brand to the mark to "BOOTLEG KIT" in a confusingly similar manner for its goods that are competing product to Thousand Oaks' BOOTLEG KIT.

161.    Deep South has sold and is currently selling products as a "Bootleg Kit" that each includes a wood oak barrel, at least one flavor infusion for distilled spirits, and instructions for using the kit bearing the mark BOOTLEG KIT in the United States, Virginia, and this District.  The Deep South goods bearing the BOOTLEG KIT mark are identical to, or substantially similar to, and a competitive product with Thousand Oaks' BOOTLEG KIT products. (**See Figure 16**).

**Figure 16**
Source:  Deep South website < www.deepsouthbarrels.com>, 8/3/2016

43



162.   Upon information and belief, no later than 2011, which was five years after Thousand Oaks commenced use and established its goodwill and trademark rights, Deep South began using the term "BOOTLEG BOX" on its website as a brand name for a combination product of an oak barrel and an essence flavoring to add to the barrel when aging a distilled spirit.

163.   Upon information and belief, the mark BOOTLEG BOX is confusingly similar to Thousand Oaks' BOOTLEG KIT for similar classes of goods in the same channel of trade and likely to confuse consumers as to the source of the product.

164.   Upon information and belief, no later than seven years after Thousand Oaks commenced use and established its goodwill and trademark rights, Deep South began using the

term "BOOTLEG KIT" as a brand name for a combination product of an oak barrel and an essence flavoring to add to the barrel when aging a distilled spirit.

165.     On information and belief, Deep South's wrongful use of the mark BOOTLEG KIT is confusingly similar, and the exact same mark as, the Thousand Oaks BOOTLEG KIT mark for similar classes of goods in the same channel of trade and likely to confuse consumers as to the source of the product.

166.     Thousand Oaks did not grant permission to Deep South to utilize its BOOTLEG KIT mark. Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the BOOTLEG KIT mark and confusingly similar marks from Thousand Oaks without permission.

167.     By improperly utilizing Thousand Oaks' BOOTLEG KIT mark on its competitive goods in the same channels of trade, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

168.     Upon information and belief, Deep South states on its website that "Deep South Barrels begin and end with premium quality American White Oak, which is the same as most distillers and wineries use." (See Exhibit V).  This statement is part of the content improperly copied by Deep South from Thousand Oaks' Website. (See Exhibit W).

169.     Upon information and belief, for at least some of its barrels manufactured for the Deep South Bootleg Kit, Deep South uses wood reclaimed from used tequila barrels in Mexico, which is not "premium quality American White Oak" wood.

170.     Upon information and belief, the Deep South Bootleg Kit barrels are of inferior quality as the Thousand Oaks' BOOTLEG KIT barrels, which are manufactured using new American White Oak wood that has been aged for at least two years.

171.   By improperly utilizing a statement of quality for its Bootleg Kit barrels while manufacturing and selling inferior barrels not of American White Oak, Deep South has diluted the strength of Thousand Oaks' BOOTLEG KIT Mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### 2. CIGAR INFUSION BARREL

172.   Upon information and belief, since at least July, 2013, Deep South began using Thousand Oaks' distinctive mark "CIGAR INFUSION BARREL" in its brand names for a competing product that had been branded, advertised and sold by Thousand Oaks since April, 2007.

173.   Deep South has sold and is currently selling goods branded as CIGAR INFUSION BARREL in the United States, Virginia, and this District. The Deep South products bearing the CIGAR INFUSION BARREL mark are competitive products to the Thousand Oaks CIGAR INFUSION BARREL products. (See Figure 17).

**Figure 17**
Source: Deep South website < www.deepsouthbarrels.com>, 8/3/2016

174.     Thousand Oaks did not grant permission to Deep South to utilize its CIGAR INFUSION BARREL mark. Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the CIGAR INFUSION BARREL mark from Thousand Oaks without permission.

175.     By improperly utilizing Thousand Oaks' CIGAR INFUSION BARREL mark on its similar goods in the same channels of commerce Deep South has caused and continues to cause irreparable harm.

176.     Upon information and belief, for at least some of its barrels manufactured for the Deep South Cigar Infusion Barrel, Deep South uses wood reclaimed from used tequila barrels in Mexico, which is not "premium quality American White Oak" wood.

177.     Upon information and belief, the Deep South Cigar Infusion barrels are of inferior quality as the Thousand Oaks' CIGAR INFUSION BARREL products, which are manufactured using new American White Oak wood that has been aged for at least two years.

178.     By improperly using a statement of quality for its Cigar Infusion Barrel while manufacturing and selling inferior barrels not of American White Oak, Deep South has diluted the strength of Thousand Oaks' CIGAR INFUSION BARREL Mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### 3.     WEDDING BARREL

179.     Upon information and belief, since at least 2014 Deep South began using Thousand Oaks' distinctive mark WEDDING BARREL in its brand names for a competing product that had been advertised and sold by Thousand Oaks since 2011.

47

180.    Deep South has sold and is currently selling goods branded as WEDDING BARREL in the United States, Virginia, and this District.  The Deep South products bearing the WEDDING BARREL mark are identical to, or substantially similar to, Thousand Oaks' WEDDING BARREL products.  (**See Figure 18**).

181.    Thousand Oaks did not grant permission to Deep South to utilize its WEDDING BARREL mark. Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the WEDDING BARREL mark from Thousand Oaks without permission.

182.    By improperly utilizing Thousand Oaks' WEDDING BARREL mark on its similar goods in the same channels of commerce Deep South has caused and continues to cause irreparable harm.

183.    Upon information and belief, for at least some of its barrels manufactured for the Deep South Wedding Barrel, Deep South uses wood reclaimed from used tequila barrels in Mexico, which is not "premium quality American White Oak" wood.

184.    Upon information and belief, the Deep South Wedding Barrels are of inferior quality as the Thousand Oaks' WEDDING BARREL products, which are manufactured specifically to furniture grade standards.

185.    By improperly using a statement of quality for its Cigar Infusion Barrel while manufacturing and selling inferior barrels not of American White Oak, Deep South has diluted the strength of Thousand Oaks' WEDDING BARREL Mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

**Figure 18**
Source: Deep South website < www.deepsouthbarrels.com>, 8/3/2016



## 4. *TOP SHELF LIQUOR AT BOTTOM SHELF PRICES*

186. Upon information and belief, no later than five years after Thousand Oaks commenced use and established its goodwill and trademark rights, Deep South began using the phrase "TOP SHELF LIQUOR AT BOTTOM SHELF PRICES" as a tagline for a combination its oak barrels for a distilled spirit that is confusingly similar to Thousand Oaks' TOP SHELF TASTE AT A BOTTOM BARREL PRICE trademark. The use is found in a promotional video made by Deep South that can be viewed at <https://www.youtube.com/watch?v=YRy1oeORb1c>.

187. Deep South's goods associated with Thousand Oaks' marks have at all times been sold and offered in the same channels of trade as the Thousand Oaks' Bootleg Kit and are confusingly similar to Thousand Oaks' goods.

188. Deep South has no authority from Thousand Oaks directly or indirectly to utilize Thousand Oaks' marks or confusingly similar marks to Thousand Oaks' marks.

49

189.     In sum, despite Thousand Oaks' long use of its marks, without authorization, license or consent of Thousand Oaks, Deep South has attempted to trade off the reputation, goodwill, and fame of the Thousand Oaks marks, and have unfairly traded on such proprietary indicia through the manufacture, advertising, promotion, distribution, and sale of the Deep South Bootleg Kit and associated goods, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks Bootleg Kit; that is likely to cause dilution of the Thousand Oaks marks; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

190.     Deep South's acts were done willfully and maliciously, and with the specific intent to imitate Plaintiff's property and goods, misappropriate, misuse and palm off of the goodwill, distinctiveness, fame and recognition Plaintiff enjoys in the industry.

191.     Deep South's use of Thousand Oaks' marks on its products, website <www.deepsouthbarrels.com>, social media, retail stores and events in connection with Deep South's products, have caused great and irreparable harm and damage to Thousand Oaks, its goodwill, and the distinctiveness of its trademarks and brand and have impaired, blurred, disparaged, tarnished and diluted same.

192.     Harm escalates each day Deep South's use, registration, and other acts complained of herein are permitted to continue.

193.     Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Deep South's continued conduct.

### E.  Trade Secret Misappropriation

194.     As part of his employment duties, Bentley was provided a user identification and password that provided him access to the Thousand Oaks' computer network system.   Mr.

Bentley was informed by Weisberg that the information contained on the Thousand Oaks computer network was confidential and proprietary, and that Bentley must not share the logic credentials or the confidential information with others outside of Thousand Oaks.

195.    Thousand Oaks' kept and maintained contact information for its barrel suppliers on the secured Thousand Oaks computer network.

196.    The contact information for barrel suppliers is particularly valuable information for Thousand Oaks. In the late 1990's and early 2000's Weisberg spent considerable time, effort, and money traveling to northern Mexico and meeting and evaluating barrel coopers in the Tequila area and Guadalajara.   He found that only a few of the coopers, most of whom made barrels for the tequila distilleries, were capable of making small oak barrels to high standards of quality.

197.    In 2010, none of the Mexican barrel suppliers identified by Weisberg as capable suppliers maintained websites nor advertised. Thus, the only way to obtain their information was to either travel to Mexico and discover them, or obtain their contact information from someone who already has done that.

198.    On information and belief, on or about early in 2010, Bentley called over the telephone each of the Mexican barrel suppliers that Weisberg had recorded in the Thousand Oaks' supplier list on the Thousand Oaks' network.   Bentley was inquiring if one of the companies could supply mini oak barrel to him at his location in Texas.

199.    Weisberg kept no other copies of the supplier list nor shared the list with anyone outside of Thousand Oaks' administrative staff.

200.    Bentley eventually found one of the coopers who was willing to manufacture and send Bentley small oak barrels.

201.    On information and belief, on or about 2010 Bentley, acting for Deep South, misappropriated the Thousand Oaks confidential information in the form of Thousand Oaks' confidential supplier list to contact barrel suppliers in Mexico that, without Weisberg's list, would take significant time, money, and travel through Mexico to create.

202.    After formation of Deep South, on information and belief, misappropriated Thousand Oaks' intellectual property and product lines.  Deep South also supplied, at least one or more time periods in the past, each of the co-Defendants Red Head, Longhorn, Craftsman, American Oak, and Man Cave Gifts with small oak barrels and products.

203.    Based on information and belief, one or more of the co-Defendants continue to use Deep South as their source for oak barrels.

204.    Deep South has benefited from the misappropriation unfairly, providing and unfair business advantage that cost significant time, resources, and money for Thousand Oaks to create.

205.    Because the trade secret misappropriation by Bentley and use by Deep South led to the start of an entire group of defendants intentionally, purposefully, and recklessly built their business based in the misappropriation of Thousand Oaks' intellectual property, the balance of the equities favors preliminary and permanent injunctive relief to restrain and enjoin Deep South's wrongful acts from continuing in the future.

### E. The Misappropriated Thousand Oaks Barrel Products

206.    On information and belief, at least four years after Thousand Oaks offered the Bootleg Kit for sale, in 2010 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Bootleg Kit" or "Bootleg Box" that is similar, or substantially similar, to the Thousand Oaks Bootleg Kit.  (See Figure 19).

207.    The creative aspects of the Bootleg Kit misappropriated by Deep South include, but are not limited to, the Deep South mark BOOTLEG KIT is the same as the Thousand Oaks' mark, BOOTLEG KIT; the Thousand Oaks oak barrel is intended to be held lengthwise and is accompanied by a stand; the Thousand Oaks oak barrel comes with a spigot that can be inserted into a hole cut near an edge in one of the heads; the Thousand Oaks oak barrel comes with a hole in the side and a stopper made of cork and a wooden handle; the Thousand Oaks Bootleg Kit includes one or more flavor "essences," such as Irish Whiskey, which can be infused into the customer's spirits inside the barrel; and the Bootleg Kit includes a single card with abbreviated instructions on how to use the barrel and a reference to the manufacturer's website for more information.

**Figure 19**





208. On information and belief, six years after Thousand Oaks offered the Cigar Infusion Barrel for sale, in 2013 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Cigar Infusion Barrel" that is similar, or substantially similar, to the Thousand Oaks Cigar Infusion Barrel. (**See Figure 20**).

209. The creative aspects of the Cigar Infusion Barrel misappropriated by Deep South include, but are not limited to, the Deep South mark CIGAR INFUSION BARREL is the same as the Thousand Oaks' mark, CIGAR INFUSION BARREL; the oak barrel is intended to stand upright on one end; a round interior access opening is cut into the top head; a round lid for the opening that is formed from cork; and a round handle attached to the center of the lid.

**Figure 20**



| Source: <www.1000oaksbarrel.com> | Source: <www.deepsouthbarrels.com> |
|---|---|

210.    On information and belief, seven years after Thousand Oaks offered the Wedding Barrel for sale, in 2016 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Wedding Barrel" that is similar, or substantially similar, to the Thousand Oaks WEDDING BARREL. (**See Figure 21**).

211.    The creative aspects of the Wedding Barrel misappropriated by Deep South include, but are not limited to, the Deep South marks WEDDING BARREL AND WEDDING CARD HOLDER OAK BARREL are the same or confusingly similar to the Thousand Oaks' mark WEDDING BARREL; the oak barrel is intended to be held lengthwise; an opening slot at the top cut into one of the staves that is large enough to receive envelopes;  a barrel interior access opening cut into one of the heads; a cover for the opening that is formed from cork or other material.

**Figure 21**



212.    On information and belief, six years after Thousand Oaks offered the Barrel Mug for sale, in 2013 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Barrel Mug" that is similar, or substantially similar, to the Thousand Oaks Barrel Mug. (**See Figure 22**).

213.    The creative aspects of the Barrel Mug misappropriated by Deep South include, but are not limited to, the Deep South mark BARREL MUG is the same or confusingly similar to the Thousand Oaks' mark BARREL MUG; the Thousand Oaks Barrel Mug is manufactured from an actual oak mini barrel that has had a head removed from one end; the Barrel Mug is intended to be held upright with an wood handle attached to the barrel; the Barrel Mug has four bands around the barrel section, the band nearest the open end is moved slightly below the rim of the opening.

**Figure 22**



| Source: <www.1000oaksbarrel.com> | Source: <www.deepsouthbarrels.com> |
|---|---|

214.    Deep South's goods associated with Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug (the "Barrel Products") have at all times been sold and offered in the same channels of trade as the Thousand Oaks' Barrel Products.

215.    The Barrel Products were created, designed, developed, and manufactured by Thousand Oaks through the expenditure of significant time, labor, skill and money.

216.    Deep South has no authority from Thousand Oaks directly or indirectly to utilize the Barrel Products or substantially similar goods to Thousand Oaks' Barrel Products.

217.    Deep South has used the Barrel Products designs to advertise, market, offer for sale, and sell similar or substantially similar goods, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Products. Deep South's acts were done willfully and maliciously, and with the specific intent to imitate

Thousand Oaks' Barrel Products, misappropriate, misuse and palm off of the goodwill, distinctiveness, fame and recognition Thousand Oaks enjoys in the industry.

218.    Deep South's use of Thousand Oaks' Barrel Products on its website <www.deepsouthbarrels.com>, social media, retail stores and events in connection with Deep South's products, has caused great and irreparable harm and damage to Thousand Oaks.  Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

219.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Deep South's continued conduct.

**FACTS RELATED TO
DEEP SOUTH'S, WOOD HARBOUR'S, AND THE TEXAS FESTIVAL'S,
SOUTHWEST FESTIVAL'S AND THE ARIZONA RENAISSANCE FESTIVAL'S
WRONGFUL AND INFRINGING ACTIVITIES**

220.    Thousand Oaks repeats and realleges each of the allegations contained in paragraphs 1 through 219 above.

221.    This action against Deep South, Wood Harbour,  The Texas Festival, Southwest, and the Arizona Festival arises out of operation of a business (Wood Harbour) owned by a former reseller partner of Thousand Oaks, Mr. Mark Carboni, who after terminating the relationship with Thousand Oaks, upon information and belief, became a reseller partner for Deep South and has continued and perpetuated Deep South's wrongful misappropriation and infringement of Thousand Oaks' intellectual property and proprietary product lines.

222.    Upon information and belief, Wood Harbour has wrongfully copied and continues to copy Thousand Oaks' intellectual property and proprietary product lines and used Thousand Oaks' intellectual property and proprietary product lines to advertise, market, offer,

58

sell, and distribute knock-off and/or infringing goods at various Renaissance festivals in Texas and Arizona.

223.    In an effort to expand its growing market across the United States, in 2008 Thousand Oaks partnered with Carboni and his company Wood Harbour to sell Thousand Oaks' products at festivals in the state of Texas. Since Carboni had no experience in the barrel manufacturing or Thousand Oaks' product lines, Mr. Weisberg sent Mr. Bentley to Texas in order to train Carboni in the promotion and sales of Thousand Oaks' barrels and other product lines.

224.    As a reseller partner, Carboni through Wood Harbour advertised, marketed, offered for sale, and sold Thousand Oaks products in Texas and Arizona, including at a commercial retail locations at the Texas Renaissance Festival, the Scarborough Renaissance Festival, and the Arizona Renaissance Festival.

225.    The business relationship between Thousand Oaks and Wood Harbour continued for approximately three years until, in October, 2011 Carboni informed Thousand Oaks that Wood Harbour would no longer be ordering product from Thousand Oaks.

226.    On information and belief, on or about October 2011 Wood Harbour began sourcing competing products from Deep South.

227.    On information and belief, Deep South and Wood Harbour have continued from 2011 to present day in a partnership, reseller, or agency arrangement to sell oak barrel and other competing products at retail locations owned by the Texas Renaissance Festival, the Scarborough Renaissance Festival, and the Arizona Renaissance Festival. Wood Harbour operates at least all of the aforesaid retail locations under its d/b/a name "Renaissance Barrels." (See Exhibit X).

228.    Instead of competing fairly by undertaking the extensive investment required to design new products and brands, Wood Harbour, The Texas Festival, Southwest, The Arizona Festival, and Deep South copied Thousand Oaks' intellectual property and leading proprietary product lines to unlawfully trade off of Thousand Oaks' valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Thousand Oaks.

229.    Thousand Oaks owns the product label for the 2010 Bootleg Kit that was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("2010 Copyright Label"). (See **Exhibit JJ, Figure 23**).

230.    **Exhibit Y** includes images and photographs from the social media pages and webpages of Wood Harbour, Deep South, the Texas Renaissance Festival, the Scarborough Renaissance Festival, and the Arizona Renaissance Festival that show Wood Harbour and/or Renaissance Barrels and/or Deep South operating at the aforesaid festivals from 2012 to 2016.

231.    **Exhibit Y** further includes images and photographs, dated 2012 to 2016, from the social media pages and webpages of Wood Harbour, Deep South, The Texas Festival, Southwest, and the Arizona Festival where many Thousand Oaks' 2010 Copyright labels are prominently displayed in a retail store on product boxes. (See **Figure 23**).

**Figure 23**
Source:  2010 BOOTLEG KIT Label, Copyright Serial No. 1-3899999741
(See Exhibit JJ)



Source:  Facebook website < www.facebook.com/DeepSouthBarrels >



For all of our Dallas / Ft Worth / Waco area friends, come see us at the Scarborough Rennisance Festival starting this weekend!

232.     Thousand Oaks did not grant permission to Wood Harbour to utilize Thousand Oaks' 2010 Copyright Labels, to advertise, market, offer, sell or distribute goods after October, 2011.

233.     Thousand Oaks has never granted permission for Deep South to utilize Thousand Oaks' la2010 Copyright Labels to advertise, market, offer, sell or distribute goods.

234.     Thousand Oaks has never granted permission to The Texas Festival to utilize Thousand Oaks' 2010 Copyright Labels to advertise, market, offer, sell or distribute goods.

235.     Thousand Oaks has never granted permission to Southwest to utilize Thousand Oaks' 2010 Copyright Labels to advertise, market, offer, sell or distribute goods.

236.     Thousand Oaks has never granted permission to The Arizona Festival to utilize Thousand Oaks' 2010 Copyright Labels to advertise, market, offer, sell or distribute goods.

237.     Upon information and belief, Wood Harbour, knowingly, willfully, and with malicious intent, recklessly took and utilized Thousand Oaks' 2010 Copyright Labels from Thousand Oaks without permission.

238.     By improperly utilizing Thousand Oaks' 2010 Copyright Labels, for advertising, selling, and/or distributing Bootleg Kit products, Wood Harbour has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

239.     Upon information and belief, Deep South, knowingly, willfully, and with malicious intent, recklessly took and utilized Thousand Oaks' 2010 Copyright Labels from Thousand Oaks without permission.

240.     By improperly utilizing Thousand Oaks' 2010 Copyright Labels, for advertising, selling, and/or distributing Bootleg Kit products, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

241.     Upon information and belief, The Texas Festival recklessly took and utilized Thousand Oaks' 2010 Copyright Labels from Thousand Oaks without permission.

242.     By improperly utilizing Thousand Oaks' 2010 Copyright Labels, for advertising, selling, and/or distributing Bootleg Kit products, The Texas Festival has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

243.     Upon information and belief, The Arizona Festival recklessly took and utilized Thousand Oaks' 2010 Copyright Labels from Thousand Oaks without permission.

244.     By improperly utilizing Thousand Oaks' 2010 Copyright Labels for advertising, selling, and/or distributing Bootleg Kit products, The Arizona Festival has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

245.     Upon information and belief, Southwest recklessly took and utilized Thousand Oaks' 2010 Copyright Labels from Thousand Oaks without permission.

246.     By improperly utilizing Thousand Oaks' 2010 Copyright Labels for advertising, selling, and/or distributing Bootleg Kit products, Southwest has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### The Bootleg Kit Trademark

247.     Without the authorization, license or consent of Thousand Oaks, upon information and belief, Wood Harbour has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, and Thousand Oaks' copyrighted BOOTLEG KIT labels, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

248.     Without the authorization, license or consent of Thousand Oaks, upon information and belief, the Texas Festival has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, and Thousand Oaks' copyrighted BOOTLEG KIT labels, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks

BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

249.    Without the authorization, license or consent of Thousand Oaks, upon information and belief, the Arizona Festival has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, and Thousand Oaks' copyrighted BOOTLEG KIT labels, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

250.    Without the authorization, license or consent of Thousand Oaks, upon information and belief, Southwest has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, and Thousand Oaks' copyrighted BOOTLEG KIT labels, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

251.    The images in **Figure 23** and **Exhibit Y** show goods advertised and for sale by Wood Harbour, The Texas Festival, Southwest, The Arizona Festival, and Deep South that are confusingly similar to, and copied from, the Thousand Oaks Cigar Barrel.

252.     The images in **Figure 23** and **Exhibit Y** show goods advertised and for sale by Wood Harbour, The Texas Festival, Southwest, and The Arizona Festival, that are confusingly similar to, and copied from, the Thousand Oaks Bootleg Kit.

253.     The images in **Figure 23** and **Exhibit Y** show goods advertised and for sale by Wood Harbour, The Texas Festival, Southwest, The Arizona Festival, and Deep South that are confusingly similar to, and copied from, the Thousand Oaks Barrel Mug.

254.     Wood Harbour has no authority from Thousand Oaks directly or indirectly to utilize the proprietary Bootleg Kit, Cigar Infusion Barrel, or Barrel Mug or substantially similar goods.

255.     Upon information and belief, Wood Harbour used the Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel and/or the Barrel Mug designs to advertise, market, offer for sale, and sell similar or substantially similar goods, in which Wood Harbour has no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Products.

256.     The acts of Wood Harbour were done willfully and maliciously, and with the specific intent to imitate Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel and Barrel Mug Products, misappropriate, misuse, and palm off of the goodwill, distinctiveness, fame and recognition Thousand Oaks enjoys in the industry.

257.     Wood Harbour's use of Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel, and/or  Barrel Mug Products on social media, in retail stores, and events has caused great and irreparable harm and damage to Thousand Oaks.  Harm escalates each day Wood Harbour's use and other acts complained of herein are permitted to continue.

258.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Wood Harbour's continued conduct.

259.    The Texas Festival has no authority from Thousand Oaks directly or indirectly to utilize Thousand Oaks' BOOTLEG KIT mark or confusingly similar marks.

260.    Without the authorization, license or consent of Thousand Oaks, upon information and belief, The Texas Festival has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the manufacture, advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

261.    By improperly utilizing Thousand Oaks' BOOTLEG KIT trademark and advertising, selling, and/or distributing Bootleg Kit products labeled with the trademark, The Texas Festival has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

262.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for The Texas Festival's continued conduct.

263.    Southwest has no authority from Thousand Oaks directly or indirectly to utilize Thousand Oaks' BOOTLEG KIT mark or confusingly similar marks.

264.    Without the authorization, license or consent of Thousand Oaks, upon information and belief, Southwest has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such

proprietary indicia through the manufacture, advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

265.    By improperly utilizing Thousand Oaks' BOOTLEG KIT trademark and advertising, selling, and/or distributing Bootleg Kit products labeled with the trademark, Southwest has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

266.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Southwest's continued conduct.

267.    The Arizona Festival has no authority from Thousand Oaks directly or indirectly to utilize Thousand Oaks' BOOTLEG KIT mark or confusingly similar marks.

268.    Without the authorization, license or consent of Thousand Oaks, upon information and belief, The Arizona Festival has attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, and has unfairly traded on such proprietary indicia through the manufacture, advertising, promotion, distribution, and sale of the Bootleg Kit, the BOOTLEG KIT trademark, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT Mark and product; that is likely to cause dilution of the Thousand Oaks BOOTLEG KIT Mark; and that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

269.    By improperly utilizing Thousand Oaks' BOOTLEG KIT trademark and advertising, selling, and/or distributing Bootleg Kit products labeled with the trademark, The

Arizona Festival has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

270.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for The Arizona Festival's continued conduct.

## CAUSES OF ACTION AGAINST DEEP SOUTH

### COUNT 1
### FEDERAL COPYRIGHT INFRINGEMENT
### [17 U.S.C. §501 et seq.]

271.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

272.    Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3893823982,1-3806696071, 1-3806240001, and 1-3806314352 that are embodied by the P5 Barrel head graphic design; deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847, and 1-3893823680 that are embodied by different versions of the Thousand Oaks Website; deposited copyright assigned case Serial No. Copyright case Serial No. 1-3893853441 for a Bootleg Kit label; the 2010 label for the BOOTLEG KIT that was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("Copyright Works").

273.    Deep South has notice of Thousand Oaks' copyright rights in the Copyright Works.

274.    Deep South did not seek and failed to obtain Thousand Oaks' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, advertise and/or market Thousand Oaks' Copyright Works.

275.    Without permission, Deep South intentionally and knowingly reproduced, copied, displayed, and/or manufactured Thousand Oaks' protected works by offering for sale, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Thousand Oaks' Copyright Works.

276.    Without permission, Deep South intentionally and knowingly reproduced, copied, displayed, and/or published Thousand Oaks' protected content from the <www.1000oaksbarrel.com> Website and used that copied content on the competing website <www.deepsouthbarrels.com>.

277.    Deep South has willfully and intentionally infringed Thousand Oaks' Website copyrights by causing the unauthorized reproduction of parts of Thousand Oaks' work from the <www.1000oaksbarrel.com>      Website      and      to      the      infringing      website <www.deepsouthbarrels.com>.

278.    The copied content is identical or substantially similar Thousand Oaks' Website copyrights and was copied without consent.

279.    As a direct result of Deep South's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Website work.

280.    Deep South's acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

281.    Deep South's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks.  Thousand Oaks is therefore entitled to

injunctive relief, statutory damages and/or Deep South's profits, gains, advantages, and increased damages.

282.     Unless enjoined, Deep South will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

283.     Thousand Oaks further seeks an injunction restraining the operation and public access of the infringing website www.deepsouthbarrels.com> to prevent current and future acts of copyright infringement.

284.     In infringing Thousand Oaks' works, Deep South knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights.  Thousand Oaks is therefore entitled to recover its attorneys' fees and costs under the Copyright Act.

## COUNT 2
## FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

285.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

286.     Thousand Oaks possesses the trademarks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES (The "MARKS").

287.     Thousand Oaks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

288.     Thousand Oaks has been using Thousand Oaks' MARKS continuously in connection with Thousand Oaks' Services in Interstate Commerce nationwide since their first dates of use, and has developed substantial goodwill in such MARKS in Thousand Oaks'

common law territory, the entire United States, prior to Deep South's adoption and use of the Thousand Oaks MARKS or any marks likely to cause confusion with Thousand Oaks MARKS.

289.    Thousand Oaks' Marks have become uniquely associated with, and thus, prior to Deep South's unauthorized use of Thousand Oaks' MARKS, identified only Thousand Oaks. Deep South has knowingly caused its services, advertisements, websites, software applications, social media profiles, promotional and marking material to enter into interstate commerce with Thousand Oaks' Marks connected therewith. This use of Thousand Oaks' MARKS by Deep South is a false designation of origin which is likely to cause confusion, initial interest confusion, reverse confusion and mistake and to deceive as to the affiliation, connection or association of Deep South with Thousand Oaks, and as to the origin, sponsorship or approval of such goods and services by Thousand Oaks.

290.    Deep South has, without authorization, on or in connection with its goods, made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection or association of Deep South's products with Thousand Oaks, and/or as to the origin, sponsorship or approval of Deep South's goods or services or commercial activities. Deep South's conduct described above violates the Lanham Act, and Deep South has unfairly competed with and injured and, unless immediately restrained, will continue to injure Thousand Oaks, causing damage to Thousand Oaks in an amount to be determined at trial, and will cause irreparable injury to Thousand Oaks' goodwill and reputation.

291.    On information and belief, the conduct of Deep South has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Thousand Oaks' rights.

292.    Deep South's egregious and intentional advertising and sale of items that are confusingly similar to and constitute a reproduction of Thousand Oaks' goods unfairly competes with Thousand Oaks and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products or related products.

293.    Deep South's conduct false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing Thousand Oaks to suffer substantial and irreparable injury for which it has no adequate remedy at law.

294.    Deep South's wrongful conduct has permitted or will permit Deep South to make substantial sales and profits on the strength of Thousand Oaks' marketing, advertising, sales and consumer recognition. As a direct and proximate result of Deep South's wrongful conduct, as alleged herein, Thousand Oaks has been and will be deprived of sales of its goods under its MARKS in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its MARKS as commercial assets in an amount as yet unknown but to be determined at trial. Thousand Oaks seeks an accounting of Deep South's profits and requests that the Court grant Thousand Oaks three times that amount as enhanced damages in the Court's discretion.

295.    Based on Deep South's wrongful conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Deep South's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest

73

**COUNT 3**
**FEDERAL TRADEMARK INFRINGEMENT**
**[15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]**

296.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

297.    Thousand Oaks has continuously used its trademarks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES (The "MARKS") in commerce since their first dates of use.

298.    Thousand Oaks owns the rights to common law marks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES and has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

299.    Deep South is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the MARKS.

300.    Deep South did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the MARKS to deal in and commercially distribute, market and sell Products and related products bearing Marks into the stream of commerce

301.    Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Deep South, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Deep South's "BOOTLEG" brands, in any variation to market or promote Deep South's products into the stream of commerce.

302.    Thousand Oaks' use of the TOP SHELF TASTE AT BOTTOM BARREL PRICES Mark in 2006 was well before the formation of Deep South, and well before the first use of the terms by Deep South, in any variation to market or promote Deep South's products into the stream of commerce.

74

303.    Thousand Oaks' use of the CIGAR INFUSION BARREL Mark in 2007 was well before the formation of Deep South, and well before the first use of the terms CIGAR INFUSION BARREL market or promote Deep South's products into the stream of commerce.

304.    Thousand Oaks' use of the WEDDING BARREL Mark in 2011 was well before the first use of the term WEDDING BARREL to market or promote Deep South's products into the stream of commerce.

305.    Deep South's intentionally and knowingly used in commerce the MARKS in connection with the sale, offering for sale, distribution, or advertising of Deep South's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' MARKS or confusingly similar marks.

306.    Deep South reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Deep South thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks' marks

307.    Deep South's unauthorized use of Thousand Oaks' BOOTLEG KIT mark infringes on Thousand Oaks' common law rights in its mark and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Deep South's products to deceive the public by passing off Deep South's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

308.    Deep South's egregious and intentional use and sale of items bearing Thousand Oaks' MARKS has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Deep South's items are authentic products manufactured by Thousand Oaks.

309.    Deep South's acts has been committed with knowledge of Thousand Oaks' exclusive rights and goodwill in the MARKS, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

310.    Deep South's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks MARKS.

311.    Deep South's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' MARKS.

312.    Thousand Oaks has suffered damages and Deep South has obtained profits and/or unjust enrichment as a result of Deep South's wrongful conduct.

313.    Thousand Oaks' have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the MARKS and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

314.    Deep South's continued and knowing use of Thousand Oaks' MARKS without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' MARKS in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.  Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116, 1117, and 1118, including Deep South's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 4
## COMMON LAW TRADEMARK INFRINGEMENT

315. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

316. Deep South's unauthorized use of BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES (The "MARKS") in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq.*, because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of Deep South's goods.

317. Deep South's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' MARKS.

318. Thousand Oaks has suffered damages and Deep South has obtained profits and/or unjust enrichment as a result of Deep South's wrongful conduct.

319. Deep South's continued and knowing use of Thousand Oaks' MARKS without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' MARKS. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including Deep South's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 5
## FEDERAL DILUTION OF MARK

320. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

321. The Bootleg Kit Mark is distinctive in the meaning of 15 U.S.C. §1125(c).

322.     Thousand Oaks has manufactures its Bootleg Kit and Cigar Infusion barrels with new, American Oak wood and developed a reputation for the high quality of its barrels.

323.     Deep South states its barrels are manufactured using premium quality American White Oak wood but is selling and/or has sold barrels manufactured from reclaimed used barrels.

324.     The Deep South Bootleg Kit barrels are of inferior quality as the Thousand Oaks' BOOTLEG KIT barrels.

325.     As a direct and proximate result of Deep South's conduct, Thousand Oaks has suffered irreparable harm the valuable BOOTLEG KIT Mark and its reputation among consumers and in the industry.  Unless Deep South's conduct is restrained, Thousand Oaks will continue to be irreparably harmed.

326.     Thousand Oaks has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Deep South's acts are allowed to continue.

327.     As a direct and proximate result of Deep South's conduct, Thousand Oaks has suffered damages to the valuable BOOTLEG KIT Mark and other damages in an amount to be proved at trial.

## COUNT 6
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW

328.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

329.     Thousand Oaks first used Thousand Oaks' MARKS before Deep South first used the terms BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES as Deep South's trademarks, in any variation, to market or promote Deep South's products.

330.     Deep South's use of Thousand Oaks' MARKS infringes on Thousand Oaks' common law rights in its MARKS and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Deep South's products to deceive the public by passing off Deep South's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

331.     Deep South's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' MARKS.

## COUNT 7
## TRADE SECRETS MISAPPROPRIATION
### [VA Code § 59.1-336 - § 59.1-338]

332.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

333.     Thousand Oaks owns a database of supplier information, customer information, and other confidential business information.

334.     Thousand Oaks undertakes reasonable precautions to maintain its client and business information as confidential and grants access only to those authorized employees who are under an obligation of confidentiality.   Thousand Oaks' confidential supplier list and customer list and other business information are of substantial economic value to Thousand Oaks.

335.     Without authorization from Thousand Oaks, and with full knowledge that Thousand Oaks expressly did not authorize use of the confidential information, Deep South owner Bentley misappropriated and improperly acquired Thousand Oaks' supplier list and other business information for use in gaining an unfair advantage over Thousand Oaks.

336.     Deep South's use of the confidential information, which was acquired by Bentley with full knowledge he was misappropriating confidential information for Deep South

that is critical to Thousand Oaks' commercial advantage, constitutes willful misappropriation of Thousand Oaks' trade secrets.

337.    The confidential information misappropriated by Defendants has substantial value and the information contained therein has been utilized by Deep South to harm Thousand Oaks.

338.    Deep South's acquisition, use and disclosure of Thousand Oaks' confidential information were a substantial factor in causing harm to Thousand Oaks

339.    As a result of Deep South's misappropriation of its trade secrets, Thousand Oaks has suffered and continues to suffer irreparable injury, for which there is no adequate remedy at law.

340.    Unless enjoined by the Court, Deep South will continue its misappropriation of Thousand Oaks trade secrets by utilizing the information contained therein to compete unfairly with Thousand Oaks, and Thousand Oaks will continue to suffer irreparable harm.

341.    Thousand Oaks has suffered economic losses to be established at trial and is entitled to recover damages for the actual loss caused by Deep South's misappropriation. Thousand Oaks is additionally entitled to recover for the unjust enrichment bestowed on Deep South as a result of its acts of misappropriation.

342.    Deep South's misappropriation of Thousand Oak's trade secrets was carried out in a willful, wanton and reckless manner in disregard of the rights of Thousand Oaks, therefore entitling Thousand Oaks to an award of punitive damages

## COUNT 8
## UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION

343.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

344.    Thousand Oaks created the first Bootleg Kit product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

345.    Deep South has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

346.    Thousand Oaks created the first Cigar Infusion Barrel product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

347.    Deep South has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

348.    Thousand Oaks created the first Wedding Barrel product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels exclusively at its Virginia facility.

81

349. Deep South has used the Wedding Barrel design to advertise, market, offer for sale, and sell a similar barrel, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

350. Thousand Oaks created the first Barrel Mug product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

351. Deep South has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

## PRAYER FOR RELIEF AGAINST DEEP SOUTH

Wherefore, as a result of the unlawful acts of Deep South set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against Deep South:

1. That Deep South has infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2. That Deep South and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently

thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3.      That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

4.      For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5.      For an accounting of all profits, income, receipts or other benefit derived by Deep South from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6.      For a disgorgement by Deep South to Thousand Oaks for all profits derived by Deep South from its acts of copyright infringement and to reimburse Thousand Oaks for all damage suffered by Thousand Oaks by reason of Deep South's acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.      For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.      For costs and interest pursuant to 17 U.S.C. §505.

9.      For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.      For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by Deep South as a result of their unlawful business acts or practices.

11. For an order directing the internet provider to take down the website where the infringing activity is conducted and transacted by Deep South, namely http://www.deepsouthbarrels.com.

12. For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Deep South directly or indirectly:

a. From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

b. From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

13. For an award of actual damages for copyright infringement to be proven at time of trial.

14. For an award of enhanced damages to be determined at time trial.

15. Preliminarily and permanently enjoining Deep South, its agents, servants, employees, officers and all persons in active concern and participation with them:

a. From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kits and in the meta tags of any websites dedicated to the same (including <www.deepsouthbarrels.com> );

b. From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Deep South are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

84

c.      From infringing Plaintiff Thousand Oaks trademarks; and

d.      From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

16.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit.

17.     Pursuant to 15 U.S.C. § 1116(a), ordering Deep South to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Deep South has complied with the injunction.

18.     Finding that, by the acts complained of above, Deep South has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114.

19.     Finding that, by the acts complained of above, Deep South has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

20.     Finding that, by the acts complained of above, Deep South has created a false designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

21.     Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

22.     Finding that the acts complained of above constitute trademark dilution of the Thousand Oaks Marks.

23.     Ordering Deep South to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering Deep South to pay Thousand Oaks:

i. Deep South's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b.     Treble actual damages in connection with Deep South's infringement of the Thousand Oaks Marks;

c.     Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

24.     From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products and in the meta tags of any websites dedicated to the same (including <www.deepsouthbarrels.com> );

25.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

26.     Finding that, by the acts complained of above, Deep South has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

27.     Ordering Deep South to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug including all profits derived therefrom.

a. Ordering Deep South to pay Thousand Oaks:

i. Deep South's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with Deep South's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug.

28.     Awarding Thousand Oaks pre-judgment and post-judgment interest against Deep South.

29.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## CAUSES OF ACTION AGAINST WOOD HARBOUR

### COUNT 9
### FEDERAL COPYRIGHT INFRINGEMENT
#### [17 U.S.C. §501 et seq.]

352.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

353.    Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3893823982,1-3806696071, 1-3806240001, and 1-3806314352 that are embodied by the P5 Barrel head graphic design.

354.    Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847,  and 1-3893823680 that are embodied by different years of the Thousand Oaks Website.

355.    Thousand Oaks owns deposited copyright assigned case Serial No. Copyright case Serial No. 1-3893853441 for a Bootleg Kit label.

356.    Wood Harbour has notice of Thousand Oaks' copyright rights in the Barrel Graphics, Website Content, Bootleg Kit Label, Product Cards, and Instructions ("Copyright Works").

357.    Wood Harbour has notice of Thousand Oaks' copyright rights in the Bootleg Kit Label, Product Cards, and Product Instructions ("Copyright Works").

358.    Wood Harbour did not seek and failed to obtain Thousand Oaks' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, advertise and/or market Thousand Oaks' Copyright Works.

359.    Without permission, Wood Harbour intentionally and knowingly reproduced, copied, displayed, and/or used Thousand Oaks' Copyright Works by offering for sale, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Thousand Oaks' Copyright Works.

360.    The copied works are identical or substantially similar Thousand Oaks' Copyright Works and was copied without consent.

361.    As a direct result of Wood Harbour's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Copyright Works.

362.    Wood Harbour's acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

363.    Wood Harbour's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks.  Thousand Oaks is therefore entitled to injunctive relief, statutory damages and/or Wood Harbour's profits, gains, advantages, and increased damages.

364.    Unless enjoined, Wood Harbour will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

88

365. In infringing Thousand Oaks' works, Wood Harbour knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover its attorneys' fees and costs under the Copyright Act.

## COUNT 10
## FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

366. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

367. Thousand Oaks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

368. Thousand Oaks has been using Thousand Oaks' Marks in connection with Thousand Oaks' products in Interstate Commerce since at least as early as 2006, and has developed substantial goodwill in such marks in Thousand Oaks' common law territory, the entire United States, prior to Wood Harbour's adoption and use of the term BOOTLEG KIT or any of the Wood Harbour marks.

369. Thousand Oaks' Marks have become uniquely associated with, and thus, prior to Wood Harbour's unauthorized use of Thousand Oaks' Marks, identified only Thousand Oaks. Wood Harbour has knowingly caused its services, advertisements, websites, software applications, social media profiles, promotional and marking material to enter into interstate commerce with Thousand Oaks' Marks connected therewith. This use of Thousand Oaks' Marks by Wood Harbour is a false designation of origin which is likely to cause confusion, initial interest confusion, reverse confusion and mistake and to deceive as to the affiliation, connection

or association of Wood Harbour with Thousand Oaks, and as to the origin, sponsorship or approval of such goods and services by Thousand Oaks.

370. Wood Harbour has, without authorization, on or in connection with its goods and services, made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection or association of Wood Harbour's products with Thousand Oaks, and/or as to the origin, sponsorship or approval of Wood Harbour's goods or services or commercial activities. Wood Harbour's conduct described above violates the Lanham Act, and Wood Harbour has unfairly competed with and injured and, unless immediately restrained, will continue to injure Thousand Oaks, causing damage to Thousand Oaks in an amount to be determined at trial, and will cause irreparable injury to Thousand Oaks' goodwill and reputation.

371. On information and belief, the conduct of Wood Harbour has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Thousand Oaks s rights.

372. Wood Harbour knew or by the exercise of reasonable care should have known that their adoption and commencement of use in commerce and continuing use of plush bird designs that are confusingly similar to and constitute a reproduction of Thousand Oaks' Copyrighted Works would cause confusion, mistake, or deception among purchasers, users and the public.

373. Wood Harbour's egregious and intentional advertising and sale of items that are confusingly similar to and constitute a reproduction of Thousand Oaks' Marks unfairly competes with Thousand Oaks and is likely to cause confusion, mistake, or to deceive, mislead, betray, and

defraud consumers to believe that the substandard imitations are genuine products or related products.

374.    Wood Harbour's  conduct false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing Thousand Oaks to suffer substantial and irreparable injury for which it has no adequate remedy at law.

375.    Wood Harbour's  wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Thousand Oaks' marketing, advertising, sales and consumer recognition. As a direct and proximate result of Wood Harbour's  wrongful conduct, as alleged herein, Thousand Oaks has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Thousand Oaks seeks an accounting of Wood Harbour's  profits and requests that the Court grant Thousand Oaks three times that amount in the Court's discretion.

376.    Based on Wood Harbour's  wrongful conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Wood Harbour's  profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest

## COUNT 11
## FEDERAL TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

377.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

378.    Thousand Oaks has continuously used its trademark BOOTLEG KIT in interstate commerce since at least as early as 2006.

91

379.    Thousand Oaks owns the rights to common law mark BOOTLEG KIT and has standing to maintain an action for trademark infringement under the Trademark Statute 15 USC § 1114.

380.    Wood Harbour  is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

381.    Wood Harbour  did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the Marks to deal in and commercially distribute, market and sell Products and related products bearing Marks into the stream of commerce

382.    Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Wood Harbour , and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Wood Harbour's "BOOTLEG" brands, in any variation to market or promote Wood Harbour's  products into the stream of commerce.

383.    Wood Harbour's   intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Thousand Oak's Mark in connection with the sale, offering for sale, distribution, or advertising of Wood Harbour's  goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' Marks.

384.    Wood Harbour reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Wood Harbour  thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks'  Marks.

385.     Wood Harbour's  unauthorized use of Thousand Oaks' BOOTLEG KIT mark infringes on Thousand Oaks' common law rights in its mark and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Wood Harbour's  products to deceive the public by passing off Wood Harbour's  products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

386.     Defendants' egregious and intentional use and sale of items bearing Thousand Oaks' trademarks has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Thousand Oaks.

387.     Defendants' acts have been committed with knowledge of Thousand Oaks'' exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

388.     Wood Harbour's  acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

389.     Wood Harbour's  acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' mark.

390.     Thousand Oaks has suffered damages and Wood Harbour  has obtained profits and/or unjust enrichment as a result of Wood Harbour's  wrongful conduct.

391.     Thousand Oaks' have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

392.     Defendants' continued and knowing use of Thousand Oaks' Marks without Thousand Oaks'' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

**COUNT 12**
**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, AND**
**FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW**

393.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

394.     Wood Harbour's unauthorized use of BOOTLEG KIT in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq*., because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of Wood Harbour's goods.

395.     Wood Harbour's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

396.     Thousand Oaks has suffered damages and Wood Harbour has obtained profits and/or unjust enrichment as a result of Wood Harbour's wrongful conduct.

397.     Wood Harbour's continued and knowing use of Thousand Oaks' Mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark. Based on such conduct, Thousand Oaks is entitled to injunctive relief as

94

well as monetary damages, including Wood Harbour's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

**COUNT 13**
**COMMON LAW TRADEMARK INFRINGEMENT**

398.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

399.     Thousand Oaks first used Thousand Oaks' Marks before Defendant first used the term UBER, or any of Defendant's Marks, in any variation to market or promote Defendant's Services.

400.     Defendant's use of Thousand Oaks' Marks infringes on Thousand Oaks' common law rights in its marks and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Defendant's Services to deceive the public by passing off Defendant's Services as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

401.     Defendant's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' Marks.

**COUNT 14**
**UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION**

402.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

403.     Thousand Oaks owns the distinctive and proprietary Bootleg Kit product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

95

404. Wood Harbour has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

405. Thousand Oaks owns the distinctive and proprietary Cigar Infusion Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

406. Wood Harbour has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

407. Thousand Oaks owns the distinctive and proprietary Wedding Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels exclusively at its Virginia facility.

408. Wood Harbour has used the Wedding Barrel design to advertise, market, offer for sale, and sell a similar barrel, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

96

409.     Thousand Oaks owns the distinctive and proprietary Barrel Mug product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

410.     Wood Harbour has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

## PRAYER FOR RELIEF AGAINST WOOD HARBOUR

Wherefore, as a result of the unlawful acts of Wood Harbour set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against Wood Harbour :

1.     That Defendants have infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2.     That Wood Harbour and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3.     That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

4.     For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5.     For an accounting of all profits, income, receipts or other benefit derived by Wood Harbour  from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6.     For a disgorgement by Wood Harbour  to Thousand Oaks for all profits derived by Wood Harbour  from its acts of copyright infringement and to reimburse Thousand Oaks for all damage suffered by Thousand Oaks by reason of Wood Harbour's  acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.     For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.     For costs and interest pursuant to 17 U.S.C. §505.

9.     For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.    For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by Wood Harbour  as a result of their unlawful business acts or practices.

11.    For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Wood Harbour  directly or indirectly:

a.     From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

b.     From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

12.    For an award of actual damages for copyright infringement to be proven at time of trial.

13.     For an award of enhanced damages to be determined at time trial.

14.     Preliminarily and permanently enjoining Wood Harbour , its agents, servants, employees, officers and all persons in active concern and participation with them:

a.      From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kits.

b.      From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Wood Harbour are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

c.      From infringing Plaintiff Thousand Oaks trademarks; and

d.      From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

15.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit.

16.     Pursuant to 15 U.S.C. § 1116(a), ordering Wood Harbour  to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

17.     Finding that, by the acts complained of above, Wood Harbour  has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114.

18.     Finding that, by the acts complained of above, Wood Harbour has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

19.     Finding that, by the acts complained of above, Wood Harbour has created a false designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

20.     Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

21.     Ordering Defendant to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering Wood Harbour to pay Thousand Oaks:

i. Wood Harbour's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b.     Treble actual damages in connection with Wood Harbour's infringement of the Thousand Oaks Marks;

c.     Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

22.     From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products.

23.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

100

24. Finding that, by the acts complained of above, Wood Harbour has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

25. Ordering Wood Harbour to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug including all profits derived therefrom.

a. Ordering Wood Harbour to pay Thousand Oaks:

i. Wood Harbour's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with Wood Harbour's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug.

26. Awarding Thousand Oaks pre-judgment and post-judgment interest against Wood Harbour.

27. Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## CAUSES OF ACTION AGAINST TEXAS RENAISSANCE FESTIVAL

### COUNT 15
### FEDERAL COPYRIGHT INFRINGEMENT
[17 U.S.C. §501 et seq.]

411. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

412. Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3893823982,1-3806696071, 1-3806240001, and 1-3806314352 that are embodied by the P5 Barrel head graphic design; deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847, and 1-3893823680 that are embodied by different versions of the Thousand Oaks Website; deposited copyright assigned case Serial No. Copyright case Serial No.

1-3893853441 for a Bootleg Kit label; the 2010 label for the BOOTLEG KIT that was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("Copyright Works").

413.    The Texas Festival did not seek and failed to obtain Thousand Oaks' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, advertise and/or market Thousand Oaks' Copyright Works.

414.    Without permission, The Texas Festival intentionally and knowingly reproduced, copied, displayed, and/or manufactured Thousand Oaks' Copyright Works by offering for sale, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Thousand Oaks' Copyright Works.

415.    The copied works are identical or substantially similar Thousand Oaks' Copyright Works and was copied without consent.

416.    As a direct result of The Texas Festival's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Copyright Works.

417.    The Texas Festival's acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

418.    The Texas Festival's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks. Thousand Oaks is therefore entitled to injunctive relief, statutory damages and/or The Texas Festival's profits, gains, advantages, and increased damages.

419.    Unless enjoined, The Texas Festival will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

420.    In infringing Thousand Oaks' works, The Texas Festival knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover its attorneys' fees and costs under the Copyright Act.

**COUNT 16**
**FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT, AND**
**FALSE DESIGNATION OF ORIGIN**
**[15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]**

421.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

422.    Thousand Oaks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

423.    Thousand Oaks has been using Thousand Oaks' Marks in connection with Thousand Oaks' products in Interstate Commerce since at least as early as 2006, and has developed substantial goodwill in such marks in Thousand Oaks' common law territory, the entire United States, prior to The Texas Festival's adoption and use of the term BOOTLEG KIT or any of The Texas Festival marks.

424.    Thousand Oaks' Marks have become uniquely associated with, and thus, prior to The Texas Festival's unauthorized use of Thousand Oaks' Marks, identified only Thousand Oaks. The Texas Festival has knowingly caused its services, advertisements, websites, software applications, social media profiles, promotional and marking material to enter into interstate commerce with Thousand Oaks' Marks connected therewith. This use of Thousand Oaks' Marks

by The Texas Festival is a false designation of origin which is likely to cause confusion, initial interest confusion, reverse confusion and mistake and to deceive as to the affiliation, connection or association of The Texas Festival with Thousand Oaks, and as to the origin, sponsorship or approval of such goods and services by Thousand Oaks.

425.    The Texas Festival has, without authorization, on or in connection with its goods and services, made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection or association of The Texas Festival's products with Thousand Oaks, and/or as to the origin, sponsorship or approval of The Texas Festival's goods or services or commercial activities. The Texas Festival's conduct described above violates the Lanham Act, and The Texas Festival has unfairly competed with and injured and, unless immediately restrained, will continue to injure Thousand Oaks, causing damage to Thousand Oaks in an amount to be determined at trial, and will cause irreparable injury to Thousand Oaks' goodwill and reputation.

426.    On information and belief, the conduct of The Texas Festival has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Thousand Oaks s rights.

427.    The Texas Festival knew or by the exercise of reasonable care should have known that their adoption and commencement of use in commerce and continuing use of plush bird designs that are confusingly similar to and constitute a reproduction of Thousand Oaks' Copyrighted Works would cause confusion, mistake, or deception among purchasers, users and the public.

428.    The Texas Festival's egregious and intentional advertising and sale of items that are confusingly similar to and constitute a reproduction of Thousand Oaks' Marks unfairly

competes with Thousand Oaks and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products or related products.

429.     The Texas Festival's conduct false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing Thousand Oaks to suffer substantial and irreparable injury for which it has no adequate remedy at law.

430.     The Texas Festival's wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Thousand Oaks' marketing, advertising, sales and consumer recognition. As a direct and proximate result of The Texas Festival's wrongful conduct, as alleged herein, Thousand Oaks has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Thousand Oaks seeks an accounting of The Texas Festival's profits and requests that the Court grant Thousand Oaks three times that amount in the Court's discretion.

431.     Based on The Texas Festival's wrongful conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including The Texas Festival's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest

## COUNT 17
## FEDERAL TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

432.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

433.     Thousand Oaks has continuously used its trademark BOOTLEG KIT in interstate commerce since at least as early as 2006.

434.    Thousand Oaks owns the rights to common law mark BOOTLEG KIT and has standing to maintain an action for trademark infringement under the Trademark Statute 15 USC § 1114.

435.    The Texas Festival is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

436.    The Texas Festival did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the Marks to deal in and commercially distribute, market and sell Products and related products bearing Marks into the stream of commerce

437.    Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of The Texas Festival, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of The Texas Festival's "BOOTLEG" brands, in any variation to market or promote The Texas Festival's products into the stream of commerce.

438.    The Texas Festival's intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Thousand Oak's Mark in connection with the sale, offering for sale, distribution, or advertising of The Texas Festival's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' Marks.

439.    The Texas Festival reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. The Texas Festival thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks' Marks.

106

440.    The Texas Festival's unauthorized use of Thousand Oaks' BOOTLEG KIT mark infringes on Thousand Oaks' common law rights in its mark and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of The Texas Festival's products to deceive the public by passing off The Texas Festival's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

441.    Defendants' egregious and intentional use and sale of items bearing Thousand Oaks' trademarks has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Thousand Oaks.

442.    Defendants' acts have been committed with knowledge of Thousand Oaks'' exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

443.    The Texas Festival's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

444.    The Texas Festival's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' mark.

445.    Thousand Oaks has suffered damages and The Texas Festival  has obtained profits and/or unjust enrichment as a result of The Texas Festival's wrongful conduct.

446.    Thousand Oaks' have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks and the goodwill associated

therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

447.     Defendants' continued and knowing use of Thousand Oaks' Marks without Thousand Oaks'' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 18
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW

448.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

449.     The Texas Festival's unauthorized use of BOOTLEG KIT in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq.*, because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of The Texas Festival's goods.

450.     The Texas Festival's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

451.     Thousand Oaks has suffered damages and The Texas Festival has obtained profits and/or unjust enrichment as a result of The Texas Festival's wrongful conduct.

452.     The Texas Festival's continued and knowing use of Thousand Oaks' Mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark.  Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including The Texas Festival's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 19
## COMMON LAW TRADEMARK INFRINGEMENT

453.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

454.     Thousand Oaks first used Thousand Oaks' Marks before Defendant first used the term UBER, or any of Defendant's Marks, in any variation to market or promote Defendant's Services.

455.     Defendant's use of Thousand Oaks' Marks infringes on Thousand Oaks' common law rights in its marks and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Defendant's Services to deceive the public by passing off Defendant's Services as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

456.     Defendant's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' Marks.

## COUNT 20
## UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION

457.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

458. Thousand Oaks owns the distinctive and proprietary Bootleg Kit product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

459. The Texas Festival has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which The Texas Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Texas Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

460. Thousand Oaks owns the distinctive and proprietary Cigar Infusion Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

461. The Texas Festival has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which The Texas Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Texas Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

462. Thousand Oaks owns the distinctive and proprietary Wedding Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels exclusively at its Virginia facility.

463. The Texas Festival has used the Wedding Barrel design to advertise, market, offer for sale, and sell a similar barrel, in which The Texas Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The

110

Texas Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

464. Thousand Oaks owns the distinctive and proprietary Barrel Mug product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

465. The Texas Festival has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which The Texas Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Texas Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

### PRAYER FOR RELIEF AGAINST THE TEXAS RENAISSANCE FESTIVAL

Wherefore, as a result of the unlawful acts of The Texas Festival set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against The Texas Festival :

1. That Defendants have infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2. That The Texas Festival and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3. That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

111

4.     For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5.     For an accounting of all profits, income, receipts or other benefit derived by The Texas Festival  from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6.     For a disgorgement by The Texas Festival  to Thousand Oaks for all profits derived by The Texas Festival  from its acts of copyright infringement and to reimburse Thousand Oaks for all damage suffered by Thousand Oaks by reason of The Texas Festival's acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.     For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.     For costs and interest pursuant to 17 U.S.C. §505.

9.     For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.    For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by The Texas Festival  as a result of their unlawful business acts or practices.

11.    For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining The Texas Festival  directly or indirectly:

a.     From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

b.     From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

112

12.     For an award of actual damages for copyright infringement to be proven at time of trial.

13.     For an award of enhanced damages to be determined at time trial.

14.     Preliminarily and permanently enjoining The Texas Festival , its agents, servants, employees, officers and all persons in active concern and participation with them:

a.      From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kits.

b.      From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Renaissance are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

c.      From infringing Plaintiff Thousand Oaks trademarks; and

d.      From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

15.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit.

16.     Pursuant to 15 U.S.C. § 1116(a), ordering The Texas Festival  to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

17. Finding that, by the acts complained of above, The Texas Festival has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114.

18. Finding that, by the acts complained of above, The Texas Festival has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

19. Finding that, by the acts complained of above, The Texas Festival has created a false

designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

20. Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

21. Ordering Defendant to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering The Texas Festival to pay Thousand Oaks:

i. The Texas Festival's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b. Treble actual damages in connection with The Texas Festival's infringement of the Thousand Oaks Marks;

c. Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

22. From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products.

114

23.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

24.     Finding that, by the acts complained of above, The Texas Festival  has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

25.     Ordering The Texas Festival  to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug including all profits derived therefrom.

a. Ordering The Texas Festival  to pay Thousand Oaks:

i. The Texas Festival's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with The Texas Festival's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug.

26.     Awarding Thousand Oaks pre-judgment and post-judgment interest against The Texas Festival.

27.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## CAUSES OF ACTION AGAINST SOUTHWEST FESTIVALS, INC.

### COUNT 21
### FEDERAL COPYRIGHT INFRINGEMENT
### [17 U.S.C. §501 et seq.]

466.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

467.     Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3893823982,1-3806696071, 1-3806240001, and 1-3806314352 that are embodied by the P5

Barrel head graphic design; deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847, and 1-3893823680 that are embodied by different versions of the Thousand Oaks Website; deposited copyright assigned case Serial No. Copyright case Serial No. 1-3893853441 for a Bootleg Kit label; the 2010 label for the BOOTLEG KIT that was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("Copyright Works").

468.    Southwest did not seek and failed to obtain Thousand Oaks' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, advertise and/or market Thousand Oaks' Copyright Works.

469.    Without permission, Southwest intentionally and knowingly reproduced, copied, displayed, and/or manufactured Thousand Oaks' Copyright Works by offering for sale, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Thousand Oaks' Copyright Works.

470.    The copied works are identical or substantially similar Thousand Oaks' Copyright Works and was copied without consent.

471.    As a direct result of Southwest's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Copyright Works.

472.    Southwest's acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

473.    Southwest's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks. Thousand Oaks is therefore entitled to

injunctive relief, statutory damages and/or Southwest's profits, gains, advantages, and increased damages.

474.     Unless enjoined, Southwest will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

475.     In infringing Thousand Oaks' works, Southwest knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover its attorneys' fees and costs under the Copyright Act.

**COUNT 22**
**FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT, AND**
**FALSE DESIGNATION OF ORIGIN**
**[15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]**

476.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

477.     Thousand Oaks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

478.     Thousand Oaks has been using Thousand Oaks' Marks in connection with Thousand Oaks' products in Interstate Commerce since at least as early as 2006, and has developed substantial goodwill in such marks in Thousand Oaks' common law territory, the entire United States, prior to Southwest's adoption and use of the term BOOTLEG KIT or any of Southwest marks.

479.     Thousand Oaks' Marks have become uniquely associated with, and thus, prior to Southwest's unauthorized use of Thousand Oaks' Marks, identified only Thousand Oaks. Southwest has knowingly caused its services, advertisements, websites, software applications, social media profiles, promotional and marking material to enter into interstate commerce with

117

Thousand Oaks' Marks connected therewith. This use of Thousand Oaks' Marks by Southwest is a false designation of origin which is likely to cause confusion, initial interest confusion, reverse confusion and mistake and to deceive as to the affiliation, connection or association of Southwest with Thousand Oaks, and as to the origin, sponsorship or approval of such goods and services by Thousand Oaks.

480.    Southwest has, without authorization, on or in connection with its goods and services, made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection or association of Southwest's products with Thousand Oaks, and/or as to the origin, sponsorship or approval of Southwest's goods or services or commercial activities. Southwest's conduct described above violates the Lanham Act, and Southwest has unfairly competed with and injured and, unless immediately restrained, will continue to injure Thousand Oaks, causing damage to Thousand Oaks in an amount to be determined at trial, and will cause irreparable injury to Thousand Oaks' goodwill and reputation.

481.    On information and belief, the conduct of Southwest has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Thousand Oaks s rights.

482.    Southwest knew or by the exercise of reasonable care should have known that their adoption and commencement of use in commerce and continuing use of plush bird designs that are confusingly similar to and constitute a reproduction of Thousand Oaks' Copyrighted Works would cause confusion, mistake, or deception among purchasers, users and the public.

483.    Southwest's egregious and intentional advertising and sale of items that are confusingly similar to and constitute a reproduction of Thousand Oaks' Marks unfairly competes with Thousand Oaks and is likely to cause confusion, mistake, or to deceive, mislead, betray, and

118

defraud consumers to believe that the substandard imitations are genuine products or related products.

484.    Southwest's conduct false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing Thousand Oaks to suffer substantial and irreparable injury for which it has no adequate remedy at law.

485.    Southwest's wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Thousand Oaks' marketing, advertising, sales and consumer recognition. As a direct and proximate result of Southwest's wrongful conduct, as alleged herein, Thousand Oaks has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Thousand Oaks seeks an accounting of Southwest's profits and requests that the Court grant Thousand Oaks three times that amount in the Court's discretion.

486.    Based on Southwest's wrongful conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Southwest's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest

## COUNT 23
## FEDERAL TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

487.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

488.    Thousand Oaks has continuously used its trademark BOOTLEG KIT in interstate commerce since at least as early as 2006.

119

489.     Thousand Oaks owns the rights to common law mark BOOTLEG KIT and has standing to maintain an action for trademark infringement under the Trademark Statute 15 USC § 1114.

490.     Southwest  is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

491.     Southwest  did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the Marks to deal in and commercially distribute, market and sell Products and related products bearing Marks into the stream of commerce

492.     Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Southwest, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Southwest's "BOOTLEG" brands, in any variation to market or promote Southwest's products into the stream of commerce.

493.     Southwest's intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Thousand Oak's Mark in connection with the sale, offering for sale, distribution, or advertising of Southwest's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' Marks.

494.     Southwest reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Southwest thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks' Marks.

495.     Southwest's unauthorized use of Thousand Oaks' BOOTLEG KIT mark infringes on Thousand Oaks' common law rights in its mark and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Southwest's products to deceive the public by passing off Southwest's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

496.     Southwest's egregious and intentional use and sale of items bearing Thousand Oaks' trademarks has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Thousand Oaks.

497.     Southwest's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

498.     Southwest's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' mark.

499.     Thousand Oaks has suffered damages and Southwest has obtained profits and/or unjust enrichment as a result of Southwest's wrongful conduct.

500.     Thousand Oaks' have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

501.     Defendants' continued and knowing use of Thousand Oaks' Marks without Thousand Oaks'' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114. Based on

121

such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 24
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW

502. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

503. Southwest's unauthorized use of BOOTLEG KIT in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq.*, because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of Southwest's goods.

504. Southwest's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

505. Thousand Oaks has suffered damages and Southwest has obtained profits and/or unjust enrichment as a result of Southwest's wrongful conduct.

506. Southwest's continued and knowing use of Thousand Oaks' Mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including Southwest's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 25
## COMMON LAW TRADEMARK INFRINGEMENT

507. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

508.    Thousand Oaks first used Thousand Oaks' Marks before Defendant first used the term UBER, or any of Defendant's Marks, in any variation to market or promote Defendant's Services.

509.    Southwest's use of Thousand Oaks' Marks infringes on Thousand Oaks' common law rights in its marks and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Defendant's Services to deceive the public by passing off Defendant's Services as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

510.    Southwest's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' Marks.

## COUNT 26
## UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION

511.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

512.    Thousand Oaks owns the distinctive and proprietary Bootleg Kit product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

513.    Southwest has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which Southwest had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Southwest has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

123

514.     Thousand Oaks owns the distinctive and proprietary Cigar Infusion Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

515.     Southwest has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which Southwest had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Southwest has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

516.     Thousand Oaks owns the distinctive and proprietary Wedding Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels exclusively at its Virginia facility.

517.     Southwest has used the Wedding Barrel design to advertise, market, offer for sale, and sell a competitive similar barrel, in which Southwest had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Southwest has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

518.     Thousand Oaks owns the distinctive and proprietary Barrel Mug product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

519.     Southwest has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which Southwest had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Southwest has not been burdened

with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

### PRAYER FOR RELIEF AGAINST THE SOUTWEST FESTIVALS, INC.

Wherefore, as a result of the unlawful acts of Southwest set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against Southwest :

1.      That Defendants have infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2.      That Southwest  and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3.      That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

4.      For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5.      For an accounting of all profits, income, receipts or other benefit derived by Southwest  from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6.      For a disgorgement by Southwest  to Thousand Oaks for all profits derived by Southwest  from its acts of copyright infringement and to reimburse Thousand Oaks for all

damage suffered by Thousand Oaks by reason of Southwest's acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.     For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.     For costs and interest pursuant to 17 U.S.C. §505.

9.     For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.    For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by Southwest  as a result of their unlawful business acts or practices.

11.    For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Southwest  directly or indirectly:

a.     From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

b.     From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

12.    For an award of actual damages for copyright infringement to be proven at time of trial.

13.    For an award of enhanced damages to be determined at time trial.

14.    Preliminarily and permanently enjoining Southwest , its agents, servants, employees, officers and all persons in active concern and participation with them:

a.     From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized

goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kits.

     b.     From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Renaissance are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

     c.     From infringing Plaintiff Thousand Oaks trademarks; and

     d.     From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

     15.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit.

     16.     Pursuant to 15 U.S.C. § 1116(a), ordering Southwest  to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

     17.     Finding that, by the acts complained of above, Southwest  has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114.

     18.     Finding that, by the acts complained of above, Southwest  has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

     19.     Finding that, by the acts complained of above, Southwest  has created a false designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

20.     Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

21.     Ordering Defendant to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering Southwest to pay Thousand Oaks:

i. Southwest's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b.     Treble actual damages in connection with Southwest's infringement of the Thousand Oaks Marks;

c.     Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

22.     From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products.

23.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

24.     Finding that, by the acts complained of above, Southwest has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

25.     Ordering Southwest to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug including all profits derived therefrom.

a. Ordering Southwest to pay Thousand Oaks:

i. Southwest's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with Southwest's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug.

26.     Awarding Thousand Oaks pre-judgment and post-judgment interest against Southwest.

27.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

**CAUSES OF ACTION AGAINST ARIZONA RENAISSANCE FESTIVAL**
**COUNT 27**
**FEDERAL COPYRIGHT INFRINGEMENT**
**[17 U.S.C. §501 et seq.]**

520.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

521.     Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3893823982,1-3806696071, 1-3806240001, and 1-3806314352 that are embodied by the P5 Barrel head graphic design; deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847, and 1-3893823680 that are embodied by different versions of the Thousand Oaks Website; deposited copyright assigned case Serial No. Copyright case Serial No. 1-3893853441 for a Bootleg Kit label; the 2010 label for the BOOTLEG KIT that was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("Copyright Works").

522.     The Arizona Festival did not seek and failed to obtain Thousand Oaks' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, advertise and/or market Thousand Oaks' Copyright Works.

523.    Without permission, The Arizona Festival intentionally and knowingly reproduced, copied, displayed, and/or manufactured Thousand Oaks' Copyright Works by offering for sale, advertising, promoting, retailing, selling, and distributing related products which are, at a minimum, substantially similar to Thousand Oaks' Copyright Works.

524.    The copied works are identical or substantially similar Thousand Oaks' Copyright Works and was copied without consent.

525.    As a direct result of The Arizona Festival's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Copyright Works.

526.    The Arizona Festival's acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

527.    The Arizona Festival's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks.  Thousand Oaks is therefore entitled to injunctive relief, statutory damages and/or The Arizona Festival's profits, gains, advantages, and increased damages.

528.    Unless enjoined, The Arizona Festival  will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

529.    In infringing Thousand Oaks' works, The Arizona Festival  knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover its attorneys' fees and costs under the Copyright Act.

## COUNT 28
## FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]

530.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

531.     Thousand Oaks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

532.     Thousand Oaks has been using Thousand Oaks' Marks in connection with Thousand Oaks' products in Interstate Commerce since at least as early as 2006, and has developed substantial goodwill in such marks in Thousand Oaks' common law territory, the entire United States, prior to The Arizona Festival's adoption and use of the term BOOTLEG KIT or any of The Arizona Festival marks.

533.     Thousand Oaks' Marks have become uniquely associated with, and thus, prior to The Arizona Festival's unauthorized use of Thousand Oaks' Marks, identified only Thousand Oaks. The Arizona Festival has knowingly caused its services, advertisements, websites, software applications, social media profiles, promotional and marking material to enter into interstate commerce with Thousand Oaks' Marks connected therewith. This use of Thousand Oaks' Marks by The Arizona Festival is a false designation of origin which is likely to cause confusion, initial interest confusion, reverse confusion and mistake and to deceive as to the affiliation, connection or association of The Arizona Festival with Thousand Oaks, and as to the origin, sponsorship or approval of such goods and services by Thousand Oaks.

534.     The Arizona Festival has, without authorization, on or in connection with its goods and services, made false designations of origin which are likely to cause confusion or

131

cause mistake or to deceive as to the affiliation, connection or association of The Arizona Festival's products with Thousand Oaks, and/or as to the origin, sponsorship or approval of The Arizona Festival's goods or services or commercial activities. The Arizona Festival's conduct described above violates the Lanham Act, and The Arizona Festival has unfairly competed with and injured and, unless immediately restrained, will continue to injure Thousand Oaks, causing damage to Thousand Oaks in an amount to be determined at trial, and will cause irreparable injury to Thousand Oaks' goodwill and reputation.

535.    On information and belief, the conduct of The Arizona Festival has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Thousand Oaks s rights.

536.    The Arizona Festival knew or by the exercise of reasonable care should have known that their adoption and commencement of use in commerce and continuing use of plush bird designs that are confusingly similar to and constitute a reproduction of Thousand Oaks' Copyrighted Works would cause confusion, mistake, or deception among purchasers, users and the public.

537.    The Arizona Festival's egregious and intentional advertising and sale of items that are confusingly similar to and constitute a reproduction of Thousand Oaks' Marks unfairly competes with Thousand Oaks and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products or related products.

538.    The Arizona Festival's conduct false designation of origin (passing off) and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing

132

Thousand Oaks to suffer substantial and irreparable injury for which it has no adequate remedy at law.

539.     The Arizona Festival's wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Thousand Oaks' marketing, advertising, sales and consumer recognition. As a direct and proximate result of The Arizona Festival's wrongful conduct, as alleged herein, Thousand Oaks has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Thousand Oaks seeks an accounting of The Arizona Festival's profits and requests that the Court grant Thousand Oaks three times that amount in the Court's discretion.

540.     Based on The Arizona Festival's wrongful conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including The Arizona Festival's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest

**COUNT 29**
**FEDERAL TRADEMARK INFRINGEMENT**
**[15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]**

541.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

542.     Thousand Oaks has continuously used its trademark BOOTLEG KIT in interstate commerce since at least as early as 2006.

543.     Thousand Oaks owns the rights to common law mark BOOTLEG KIT and has standing to maintain an action for trademark infringement under the Trademark Statute 15 USC § 1114.

544. The Arizona Festival is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

545. The Arizona Festival did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the Marks to deal in and commercially distribute, market and sell Products and related products bearing Marks into the stream of commerce

546. Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of The Arizona Festival, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of The Arizona Festival's "BOOTLEG" brands, in any variation to market or promote The Arizona Festival's products into the stream of commerce.

547. The Arizona Festival's intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Thousand Oak's Mark in connection with the sale, offering for sale, distribution, or advertising of The Arizona Festival's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' Marks.

548. The Arizona Festival reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. The Arizona Festival thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks' Marks.

549.     The Arizona Festival's unauthorized use of Thousand Oaks' BOOTLEG KIT mark infringes on Thousand Oaks' common law rights in its mark and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of The Arizona Festival's products to deceive the public by passing off The Arizona Festival's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

550.     The Arizona Festival's egregious and intentional use and sale of items bearing Thousand Oaks' trademarks has caused actual confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Thousand Oaks.

551.     The Arizona Festival's acts have been committed with knowledge of Thousand Oaks'' exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

552.     The Arizona Festival's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

553.     The Arizona Festival's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' mark.

554.     Thousand Oaks has suffered damages and The Arizona Festival  has obtained profits and/or unjust enrichment as a result of The Arizona Festival's wrongful conduct.

555.     Thousand Oaks' have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks and the goodwill associated

therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

556.    The Arizona Festival's continued and knowing use of Thousand Oaks' Marks without Thousand Oaks'' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 30
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW

557.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

558.    The Arizona Festival's unauthorized use of BOOTLEG KIT in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq*., because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of The Arizona Festival's goods.

559.    The Arizona Festival's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

560.    Thousand Oaks has suffered damages and The Arizona Festival has obtained profits and/or unjust enrichment as a result of The Arizona Festival's wrongful conduct.

561.    The Arizona Festival's continued and knowing use of Thousand Oaks' Mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark.  Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including The Arizona Festival's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 31
## COMMON LAW TRADEMARK INFRINGEMENT

562.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

563.    Thousand Oaks first used Thousand Oaks' Marks before Defendant first used the term UBER, or any of Defendant's Marks, in any variation to market or promote Defendant's Services.

564.    The Arizona Festival's use of Thousand Oaks' Marks infringes on Thousand Oaks' common law rights in its marks and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Defendant's Services to deceive the public by passing off Defendant's Services as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

565.    Defendant's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, tarnished and diluted Thousand Oaks' goodwill in Thousand Oaks' Marks.

## COUNT 32
## UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION

566.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

567. Thousand Oaks owns the distinctive and proprietary Bootleg Kit product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

568. The Arizona Festival has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which The Arizona Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Arizona Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

569. Thousand Oaks owns the distinctive and proprietary Cigar Infusion Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

570. The Arizona Festival has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which The Arizona Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Arizona Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

571. Thousand Oaks owns the distinctive and proprietary Wedding Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels exclusively at its Virginia facility.

572. The Arizona Festival has used the Wedding Barrel design to advertise, market, offer for sale, and sell a similar barrel, in which The Arizona Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The

138

Arizona Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

573. Thousand Oaks owns the distinctive and proprietary Barrel Mug product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

574. The Festival has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which The Arizona Festival had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because The Arizona Festival has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

## PRAYER FOR RELIEF AGAINST THE ARIZONA RENAISSANCE FESTIVAL

Wherefore, as a result of the unlawful acts of The Arizona Festival set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against The Arizona Festival :

1. That Defendants have infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2. That The Arizona Festival and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

139

3.    That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

4.    For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5.    For an accounting of all profits, income, receipts or other benefit derived by The Arizona Festival  from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6.    For a disgorgement by The Arizona Festival  to Thousand Oaks for all profits derived by The Arizona Festival  from its acts of copyright infringement and to reimburse Thousand Oaks for all damage suffered by Thousand Oaks by reason of The Arizona Festival's acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.    For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.    For costs and interest pursuant to 17 U.S.C. §505.

9.    For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.    For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by The Arizona Festival  as a result of their unlawful business acts or practices.

11.    For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining The Arizona Festival  directly or indirectly:

a.    From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

140

b.      From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

12.     For an award of actual damages for copyright infringement to be proven at time of trial.

13.     For an award of enhanced damages to be determined at time trial.

14.     Preliminarily and permanently enjoining The Arizona Festival , its agents, servants, employees, officers and all persons in active concern and participation with them:

a.      From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kits.

b.      From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Renaissance are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

c.      From infringing Plaintiff Thousand Oaks trademarks; and

d.      From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

15.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit.

16.     Pursuant to 15 U.S.C. § 1116(a), ordering The Arizona Festival  to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order

141

of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

16.     Finding that, by the acts complained of above, The Arizona Festival  has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114.

17.     Finding that, by the acts complained of above, The Arizona Festival  has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

18.     Finding that, by the acts complained of above, The Arizona Festival  has created a false

designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

18.     Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

20.     Ordering Defendant to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering The Arizona Festival  to pay Thousand Oaks:

i. The Arizona Festival's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b.     Treble actual damages in connection with The Arizona Festival's infringement of the Thousand Oaks Marks;

c.     Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

21.     From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any

142

unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products.

22.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

23.     Finding that, by the acts complained of above, The Arizona Festival  has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

24.     Ordering The Arizona Festival  to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug including all profits derived therefrom.

a. Ordering The Arizona Festival  to pay Thousand Oaks:

i. The Arizona Festival's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with The Arizona Festival's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug.

25.     Awarding Thousand Oaks pre-judgment and post-judgment interest against The Arizona Festival.

26.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## FACTS RELATED TO
## CRAFTSMAN'S WRONGFUL AND INFRINGING ACTIVITIES

575.    This action against Craftsman arises out of Craftsman's operation of a business that is in direct competition with Thousand Oaks, and which wrongfully has copied and continues to copy Thousand Oaks' intellectual property and misappropriate Thousand Oaks' product lines.

576.    Upon information and belief, Defendant Craftsman Barrel Company is a national supplier of personal sized oak barrels and related products in the United States and a direct competitor of Thousand Oaks.  Craftsman was formed in the state of Michigan in 2014.

577.    Upon information and belief, Craftsman has sold, offered to sell, promoted, marketed and/or distributed their products across the United States, including in Virginia and in this District.  Craftsman markets, promotes, offers to sell, and sells its products through its website <www.craftsmanbarrels.com> and promotes its products on social media sites including Facebook® and Twitter®.

578.    Instead of competing fairly by undertaking the extensive investment required to design new products and brands, Craftsman copied Thousand Oaks' images, website content, and leading product lines to form an entire business by unlawfully trading off of Thousand Oaks' valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Thousand Oaks.

579.    The history between Craftsman and Thousand Oaks began on or around January, 2014 when Mr. Jeremy Phillips, founder of Craftsman Barrel Company, approached Mr. Weisberg of Thousand Oaks to inquire about Thousand Oaks supplying Craftsman with oak barrels for resale to Craftsman's customers.  Craftsman informed Thousand Oaks that Deep South was Craftsman's current barrel and product supplier and Craftsman desired to replace

Deep South with Thousand Oaks. Weisberg informed Phillips that Deep South has misappropriated Thousand Oaks' intellectual property and Weisberg had noticed Deep South about the misappropriation and that Thousand Oaks would set up Craftsman as a Thousand Oaks' partner/reseller under the condition that Craftsman would not sell any products from any competitors of Thousand Oaks. Craftsman agreed and signed a partner contract stating such terms.

580.    Shortly thereafter, Craftsman began selling Thousand Oaks manufactured barrels and products as Craftsman branded products. As part of their agreement, Thousand Oaks allowed Craftsman to use Thousand Oaks' photographs, graphics, images, product descriptions, and informational content on the Craftsman web page as a resource for Craftsman customers. Craftsman would also transmit text and graphics to Thousand Oaks for the purpose of engraving the text or graphics onto Craftsman customers' barrel heads to create a personalized barrel. Sometime later, Craftsman purchased its own laser engraving machine and began engraving barrels at the Craftsman location.

581.    On or about the second quarter of 2016, Thousand Oaks began receiving replacement tickets from Craftsman customers demanding replacement barrels for the reasons including shoddy craftsmanship causing the barrels to leak water. However, Plaintiff had no invoice or sales records or any other kinds of records of the leaking barrels allegedly manufactured by Thousand Oaks. Mr. Weisberg called Phillips about the mysterious tickets and discovered that Craftsman had secretly, in violation of the Thousand Oaks' partner agreement, hired co-Defendant Deep South as Craftsman's barrel supplier. Weisberg was further informed by Phillips that Craftsman was receiving and reselling barrels from co-Defendant Deep South Barrels and the return tickets were for Deep South's barrels.

582.    Mr. Weisberg reminded Phillips of Craftsman's obligation under their agreement not to sell any product from any competitor of Thousand Oaks. Phillips refused to stop selling Deep South's barrels.

583.     Mr. Weisberg immediately terminated the partnership under the terms in the agreement. Mr. Weisberg notified Phillips directly that Craftsman can no longer use any of Thousand Oaks' barrel graphic designs, images or trademarks to advertise or associate with an Craftsman products.   Weisberg specifically mentioned that the images of Thousand Oaks' products used by Craftsman on <www.craftsmanbarrels.com> are photographs belonging to Thousand Oaks and the images must be removed by Craftsman. Phillips refused to comply with Weisberg's demands.

### A.     The Conversion of Thousand Oaks Images

584.     On     information     and     belief,     Craftsman,     via     its     website <www.craftsmanbarrels.com>, uses photographs and/or images of barrels to advertise, promote, and sell Craftsman barrels.

585.     On information and belief, certain photographs and/or images ("Barrel Images") used by Craftsman are the property of, and have at all times been owned by, Thousand Oaks. Thousand Oaks allowed Craftsman to use the Barrel Images during the time period Craftsman was a partner to Thousand Oaks.  After termination of the partnership agreement, and after cease and desist demands from Thousand Oaks, Craftsman misappropriated the Barrel Images and continues to misappropriate the Barrel Images to market, advertise, and sell Craftsman products on Craftsman's website.

586.     The Barrel Images are used on both the headline banner of the Home Page of <www.craftsman barrels.com> and on individual product pages.  An example of the wrongful misappropriation of the Barrel Images is no more obvious than a Thousand Oaks WEDDING BARREL displayed as a headline banner on Craftsman's website home page.  (See Figure 24). This is the same image from the Thousand Oaks' website shows as a thumbnail image in Figure 5. The Thousand Oaks WEDDING BARREL in Figure 5 and Figure 25 is engraved "Amy and Bryan Weisberg," which are the names of Weisberg, owner of Thousand Oaks, and Weisberg's wife.

146

**Figure 24**
Source: < www.craftsmanbarrels.com > 8/3/2016



587.     On information and belief, the remaining Barrel Images are displayed on Craftsman's "New Oak Barrels" page as a thumbnail image, and on each individual barrel's product page. However, when a mouse icon rolls over one of the Barrel Images, the underlying image changes to a different image of a Craftsman barrel or product.

588.     The TOB Images were, and continue to be, used by Craftsman to advertise and sell oak barrels, wedding barrels, cigar barrels, and other competing products.

589.     The images on the Craftsman website are the same or substantially similar as the copyrighted TOB Images and infringe Thousand Oaks' copyright for the TOB Images. **Exhibit Z** includes a table of the misappropriated Craftsman images.

590.     Craftsman knowingly, willfully, and with malicious intent, recklessly took and utilized the TOB Images from Thousand Oaks without permission.   Thus, Thousand Oaks did not grant permission to Craftsman to utilize any of its barrel graphics after termination of the partner agreement.

591. By improperly utilizing Thousand Oaks' copyrighted TOB Images on its website, Craftsman has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

## B. The Infringing Website

592. Craftsman's' website <www.craftsmanbarrels.com> was created by Craftsman to compete head-to-head with Thousand Oaks' Website.

593. Thousand Oaks owns a collection of Thousand Oaks 2003 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568341 (See **Exhibit D**), a collection of Thousand Oaks 2008 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823596 (See **Exhibit E**), a collection of Thousand Oaks 2010 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568847 (See **Exhibit F**), and a collection of Thousand Oaks 2014 Website pages that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823680 (See **Exhibit G**), collectively the "Website Copyrights."

594. Instead of competing fairly by undertaking the extensive investment required to author new content for a new website, Craftsman carefully and methodically copied large chunks of Thousand Oaks' Website including instructions for a curing a new barrel, how to clean a barrel, Frequently Asked Questions section ("FAQ"), and product descriptions ("Copied Content").

595. The Copied Content was included into the Craftsman Website for promoting, accompanying, and/or selling many of the same or similar goods Thousand Oaks offers for sale in the same channels of commerce.

596.     The Copied Content, embodying in the Website Copyrights, was copied by Craftsman and has been and/or is now also provided on the Craftsman Website. In many cases every word of the Copied Content is identical to the original works of authorship created by Thousand Oaks and in other cases large portions are taken and derived from Thousand Oaks' original works of authorship. The tables in **Exhibit AA** are illustrative of the aforesaid copying, and shows that the materials posted to the Craftsman Website are substantially similar to the original works of authorship created by Thousand Oaks and claimed in the Website Copyrights.

597.     Without authorization or permission from Thousand Oaks, Craftsman through <www.craftsmanbarrel.com> is using the Website Copyrights on the website <www. craftsmanbarrel.com>.

598.     Thousand Oaks did not grant permission to Craftsman to utilize any of its Website Copyrights. Craftsman knowingly, willfully, and with malicious intent, recklessly took and utilized the Website Copyrights from Thousand Oaks without permission.

599.     By improperly utilizing Thousand Oaks' Website Copyrights on the Craftsman Website, Craftsman has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### C.  The Infringing Trademark

600.     Upon information and belief, since at least October, 2015 Craftsman began using Thousand Oaks' distinctive mark WEDDING BARREL in its brand names for a competing product that had been advertised and sold by Craftsman.

601.     Craftsman has sold and is currently selling goods branded as WEDDING BARREL in the United States, Virginia, and this District. The Craftsman products bearing the

WEDDING BARREL mark are identical to, or substantially similar to, Thousand Oaks'
WEDDING BARREL products. **(See Figure 25)**.

**Figure 25**
Source:  Craftsman website < www.craftsmanbarrels.com>, 8/3/2016



602.    Thousand Oaks did not grant permission to Craftsman to utilize its WEDDING
BARREL mark. Craftsman knowingly, willfully, and with malicious intent, recklessly took and
utilized the WEDDING BARREL mark from Thousand Oaks without permission.

603.    By improperly utilizing Thousand Oaks' WEDDING BARREL mark on its
competing goods in the same channels of commerce as Thousand Oaks, Craftsman has caused
and continues to cause irreparable harm to Thousand Oaks.

150