IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THOUSAND OAKS BARREL CO.,     )
LLC,     )
     **Plaintiff,**     )
     )       **Case No. 1:16-cv-1035**
     **v.**     )
     )
**DEEP SOUTH BARRELS LLC,** *et al.,*     )
     **Defendants.**     )

## MEMORANDUM OPINION

The matter came before the Court on defendants' joint motion to dismiss plaintiff's amended complaint for (i) lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., (ii) failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., and (iii) misjoinder under Rule 20, Fed. R. Civ. P. (Doc. 41). The matter was fully briefed, argued on January 13, 2017, and taken under advisement. Accordingly, defendants' motion is now ripe for disposition.

### I.

The facts pertinent to defendants' motion to dismiss are derived from the amended complaint, exhibits attached to the amended complaint, and the affidavits defendants submitted to challenge the existence of personal jurisdiction.[1]

Plaintiff Thousand Oaks is a Virginia limited liability company with its principal place of business in Manassas, Virginia. Defendant Deep South Barrels LLC is a Texas limited liability company located in Pearland, Texas. Defendant Jonathan Emmons is a former owner of Deep South Barrels and was Deep South Barrels' former Managing Partner and Vice President ("VP")

---

[1] Courts may consider affidavits in assessing whether personal jurisdiction exists. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

of Business Solutions.  Defendant Elissa Emmons is a former owner of Deep South Barrels and was Deep South Barrels' former Managing Partner and VP of Business Operations.  Defendant Randall Bentley is the current owner of Deep South Barrels.  Bentley, together with Jonathan and Elissa Emmons, founded Deep South Barrels in June 2010.  Defendant Wood Harbour is a sole proprietorship organized under Texas law and located in Texas.  Defendant Mark Carboni is the founder and owner of Wood Harbour.

Bryan Weisberg founded plaintiff's predecessor-in-interest in 1999, and in 2003 plaintiff began manufacturing and selling miniaturized bourbon barrels that allow individuals to age and flavor their own liquor.  Plaintiff has also created a "barrel mug" product, which is essentially a wooden beer mug that looks like a small barrel.  In 2003, plaintiff created an e-commerce website to advertise and sell its products.  Plaintiff also began setting up vendor booths in outdoor festivals to sell its products, and plaintiff became a wholesale supplier of its barrels to retail outlets.  In 2008, plaintiff purchased a laser engraving machine so that plaintiff could create personalized barrels for customers by burning graphics or customers' names on the end of the barrel.  Plaintiff created a catalog of images customers could choose to engrave on the barrels they purchased from plaintiff.  Plaintiff alleges that its barrel products have been a significant commercial success, as plaintiff has sold hundreds of thousands of barrels through its website and various retail outlets.

Plaintiff has submitted for copyright registration (i) the graphic designs for the barrels, (ii) the website pages, (iii) the product catalogs, and (iv) various product labels.  Plaintiff also alleges that it has acquired common law trademark rights in the marks for four of its products: (1) the "Bootleg Kit" mark, which identifies a product launched in 2006 that allows customers to flavor their spirits in a miniature barrel, (2) the "Cigar Infusion Barrel" mark, which plaintiff

2

began using in 2007 to identify a product line of oak barrels designed to store and flavor cigars, (3) the "Wedding Barrel" mark, which plaintiff began using in 2011 to identify a miniature oak barrel designed to hold wedding cards and other wedding gifts, and (4) the "Top Shelf Taste at a Bottom Barrel Price" mark, which plaintiff began using in 2006 as a tagline for its Bootleg Kit product. Plaintiff has also submitted the Bootleg Kit, Cigar Infusion Barrel, and Wedding Barrel marks for registration with the United States Patent and Trademark Office ("PTO"), and the trademark applications are currently pending with the PTO.

Plaintiff alleges that Deep South Barrels copied plaintiff's engraving designs, trademarks, and product lines and thereby unlawfully traded off plaintiff's goodwill and reputation. In particular, plaintiff alleges that Deep South Barrels has used the phrases "Bootleg Box," "Bootleg Kit," "Cigar Infusion Barrel," "Wedding Barrel," and "Top Shelf Liquor at Bottom Shelf Prices" to identify Deep South Barrels products that are similar to plaintiff's products. Plaintiff alleges that Deep South Barrels has sold infringing Deep South Barrels products throughout the United States, including Virginia, through Deep South Barrels' interactive e-commerce website, and that Virginia residents have purchased Deep South Barrels' products from its website. Finally, plaintiff alleges that Bentley, a former employee of plaintiff, had access to plaintiff's confidential business information database, and that Bentley misappropriated that information for the purpose of establishing and operating Deep South Barrels.

With respect to plaintiff's claims against defendants Wood Harbour and Mark Carboni, plaintiff also alleges that Carboni and Wood Harbour have infringed on plaintiff's copyrights and trademarks. Plaintiff further alleges that Wood Harbour and plaintiff reached an oral agreement in 2008 to allow Wood Harbour to sell plaintiff's products at Wood Harbour's retail stores and festival sites in Texas, but as part of that oral agreement Wood Harbour could not sell any

3

products from plaintiff's competitors.  Plaintiff alleges that Wood Harbour breached that

agreement in 2011 by selling Deep South Barrels' products.

Plaintiff's initial complaint in this case, filed in August 2016, consisted of 294 pages,

1134 numbered paragraphs, and hundreds of pages of exhibits.  Because that complaint was

inappropriately prolix, it was dismissed *sua sponte* without prejudice for failure to comply with

Rule 8, Fed. R. Civ. P.[2]  *See Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, No.

1:16-cv-1035 (E.D. Va. Aug. 30, 2016) (Order).  Plaintiff was given leave to file an amended

complaint, which it did.  Plaintiff's amended complaint is 107 pages, which is still too long, but

plaintiff was not required to file another complaint.

Plaintiff brings eight claims against defendants Deep South Barrels, Jonathon Emmons,

Elissa Emmons, and Bentley in its amended complaint: (1) federal copyright infringement under

17 U.S.C. § 501 against Deep South Barrels, (2) contributory and vicarious copyright

infringement under 17 U.S.C. § 501 against Jonathan Emmons, Elissa Emmons, and Bentley, (3)

federal trademark infringement under 15 U.S.C. § 1125(a)(1)(A) against Deep South Barrels, (4)

contributory and vicarious trademark infringement under 15 U.S.C. § 1125(a)(1)(A) against

Jonathan Emmons, Elissa Emmons, and Bentley, (5) common law trademark infringement under

Virginia law against Deep South Barrels, (6) unfair competition under Virginia law against Deep

South Barrels, (7) a violation of the Virginia Uniform Trade Secrets Act ("VUTSA") against

Deep South Barrels, and (8) common law misappropriation under Virginia law against Deep

---

[2] Rule 8, Fed. R. Civ. P., requires complaints to consist of a "short and plain statement of the claim showing that the pleader is entitled to relief," and further provides that allegations must be "simple, concise, and direct."  Rule 8(a)(2), (d)(1), Fed. R. Civ. P.  Plaintiff's prolix initial complaint fell far short of these sensible and easy-to-satisfy requirements.

South Barrels. Plaintiff seeks damages and injunctive relief against Deep South Barrels, Jonathan Emmons, Elissa Emmons, and Bentley.

Plaintiff brings seven claims against defendants Wood Harbour and Mark Carboni, which are numbered from 9–15 in accordance with plaintiff's amended complaint: (9) federal copyright infringement under 17 U.S.C. § 501 against Wood Harbour, (10) contributory and vicarious copyright infringement under 17 U.S.C. § 501 against Carboni, (11) federal trademark infringement under 15 U.S.C. § 1125(a) against Wood Harbour, (12) contributory and vicarious trademark infringement under 15 U.S.C. § 1125(a) against Carboni, (13) common law trademark infringement under Virginia law against Wood Harbour, (14) unfair competition under Virginia law against Wood Harbour, and (15) breach of contract against Wood Harbour. Plaintiff also seeks damages and injunctive relief against Wood Harbour and Carboni.

Defendants have filed a joint motion to dismiss all of plaintiff's claims for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P. Additionally, defendants also move to dismiss Wood Harbour and Carboni for misjoinder under Rule 20, Fed. R. Civ. P., and move to dismiss most of plaintiff's claims against all defendants for failure to state plausible claims for relief under Rule 12(b)(6), Fed. R. Civ. P.

## II.

Because defendants' motion to dismiss for lack of personal jurisdiction, if granted, eliminates the need to address any other issues, the first question is whether personal jurisdiction exists over any defendants. Under Rule 12(b)(2), Fed. R. Civ. P., "a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v.*

5

*Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Specifically, plaintiff must ultimately prove the existence of personal jurisdiction by a preponderance of the evidence, but when "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Courts can exercise personal jurisdiction over a defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause." *Id.* Put differently, the long-arm statute must reach defendant's conduct, and that reach must not exceed the statute's constitutional grasp. *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d. 681, 684 (E.D. Va. 1999).

Virginia's long-arm statute provides for the exercise of personal jurisdiction where a defendant "transact[s] any business" in Virginia. Va. Code § 8.01-328.1(A). When personal jurisdiction "is based solely upon [the long-arm statute], only a cause of action arising from acts enumerated in [this statute] may be asserted" against the defendant. *Id.* § 8.01-328.1(C). The Fourth Circuit has explained that Virginia's long-arm statute "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, the "statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id.* (internal quotation marks omitted); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276–77 (4th Cir. 2009).

The Due Process Clause requires a nonresident defendant to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Plaintiff can satisfy the "minimum contacts"

requirement by showing that specific jurisdiction exists over defendants, which requires plaintiff to show that the "defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather*, 773 F.3d at 559. Whether a nonresident defendant's contacts with the forum state sufficiently qualify for specific jurisdiction depends on the "extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state," whether plaintiff's claims arise out of defendant's forum activities, and "whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (internal quotation marks omitted).

Defendants contend that they lack the requisite contacts with Virginia to permit specific jurisdiction. In particular, defendants argue (i) that Deep South Barrels' sales of its products into Virginia via its e-commerce website are insufficient to establish specific jurisdiction, (ii) that personal jurisdiction is improper over defendants Bentley, Jonathan Emmons, and Elissa Emmons based solely on their status as corporate officers of Deep South Barrels, and (iii) that Wood Harbour and Carboni do not have sufficient contacts with Virginia.[3]

---

[3] The minimum contacts requirement can also be satisfied through general jurisdiction, which requires a "showing of continuous and systematic activities in the forum state." *Universal Leather*, 773 F.3d at 559. Plaintiff does not argue that general jurisdiction exists over any defendant, and any such argument would fail because every defendant lacks the kind of extensive, systematic contacts with Virginia that are necessary for general jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (stating that courts can exercise general jurisdiction over nonresident defendants only where "their affiliations with the [forum] are so continuous and systematic as to render them essentially at home in the forum State") (internal quotation marks omitted).

**A.**

The first issue is whether personal jurisdiction exists over Deep South Barrels based on

its e-commerce sales in Virginia.  Deep South Barrels is a non-resident LLC headquartered in

Texas.  Plaintiff alleges in its amended complaint that Deep South Barrels

> (i) sells barrels throughout the United States, including Virginia,
> (ii) has an interactive e-commerce website which allows customers to select
> products, order them, and have them shipped to the customer, and
> (iii) maintains an ongoing relationship with customers by requiring them to
> register with the website.

In addition to those allegations, Deep South Barrels' affidavit establishes that Deep South

Barrels has no offices in Virginia, owns no property in the state, does not employ anyone in

Virginia, and has never attended or marketed its products at any festivals in Virginia.  As a

result, Deep South Barrels' sole contacts with Virginia are its sales to Virginia customers via

Deep South Barrels' website:  Deep South Barrels has had 251 customers in Virginia since the

company's founding in 2010, and since 2013 its Virginia customers account for 1.21% of its

total number of customers.  Deep South Barrels has also made 99 shipments to Virginia, which is

1.17% of the company's total number of shipments.

Defendants argue that these e-commerce contacts are insufficient to confer specific

jurisdiction over Deep South Barrels, given the small percentage of Internet sales to Virginia

residents and the lack of any ads or marketing targeted at Virginia.  Defendants further argue that

these facts suggest that Deep South Barrels' contacts with Virginia resulted from happenstance.

Defendants' arguments are unpersuasive.

In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002),

the Fourth Circuit established a test for determining whether specific jurisdiction exists over a

nonresident defendant based on the defendant's Internet contacts with the forum.  There, the

Fourth Circuit adopted the "sliding scale" model established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,[4] which looks to the nature and quality of defendant's Internet activity to determine whether personal jurisdiction exists. At one end of the scale or continuum "are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). At the other end of the scale or continuum are passive websites that simply put information on the Internet that forum users can access, and thus are typically not a basis for exercising personal jurisdiction. *Id.* The Fourth Circuit has adopted and adapted that sliding scale approach, and as a result a state can exercise personal jurisdiction over a nonresident defendant when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.*

Plaintiff has established a prima facie case of personal jurisdiction over Deep South Barrels under the *ALS Scan* test. Deep South Barrels directed electronic activity into Virginia with the manifest intent to do business with Virginia residents when it set up an interactive e-commerce website accessible to Virginia residents and used that website to fulfill Virginia customers' Internet purchases. Contrary to defendants' argument, Deep South Barrels' interactive e-commerce website is not "passive" or "semi-interactive"; the website is plainly interactive, and as the *Zippo* analysis makes clear, there is no doubt that such websites satisfy the purposeful availment requirement of specific jurisdiction. *See Zippo*, 952 F. Supp. at 1125–26

---

[4] 952 F. Supp. 1119 (W.D. Pa. 1997).

("[The] conducting of electronic commerce with [forum] residents constitutes the purposeful

availment of doing business in [the forum]"). Nor does Deep South Barrels' small percentage of

sales to Virginia residents defeat personal jurisdiction.[5]  Indeed, several courts have persuasively

concluded that personal jurisdiction exists on the basis of facts similar to this case, namely where

the defendant has a national interactive e-commerce website that generates a small amount of e-

commerce sales in the forum state.[6]  The lack of ads targeted at Virginia also does not change the

---

[5] Defendants argue that the small percentage of sales to Virginia residents does not satisfy the "transacts any business" requirement of Virginia's long-arm statute because those sales are not significant.  In support of this argument, defendants cite *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 424 (E.D. Va. 1996).  Defendants' reliance on *DeSantis* is misplaced because that case is inapposite.  In *DeSantis*, the defendant sold only a single product in the forum state, and the forum resident who purchased the product did so "solely to establish personal jurisdiction." *Id.*  In addition to the fact that the Virginia customers did not purchase the Deep South Barrels products to establish personal jurisdiction over Deep South Barrels, it is also true that Deep South Barrels has sold far more than one product in Virginia; it has made 99 shipments to Virginia residents.

[6] *See, e.g., Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 755, 757–58 (7th Cir. 2010) (holding that prima facie case of personal jurisdiction existed in Illinois over nonresident defendant where complaint alleged that defendant sold 300 packs of cigarettes to an Illinois resident through defendant's e-commerce website); *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1366, 1370 (N.D. Ga. 2013) (concluding that nonresident defendant was subject to specific jurisdiction in Georgia based on defendant's e-commerce sales in Georgia, even though defendant had no physical presence in Georgia and its Georgia sales were no more than 2% of total sales); *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 717 (D. Md. 2004) (concluding that the exercise of specific jurisdiction over a nonresident defendant "easily comport[ed]" with the Due Process Clause where .02% of defendant's e-commerce sales were in the forum state); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (concluding that personal jurisdiction was appropriate over nonresident defendant based on defendant's "highly commercial website," which provided information and allowed consumers to purchase defendant's products online, because defendant's small number of "on-line sales [to forum residents] constitute[d] conducting business over the Internet").
    Defendants point to *Graduate Management Admission Council v. Raju*, 241 F. Supp. 2d 589 (E.D. Va. 2003), to argue that Deep South Barrels' Internet contacts with Virginia are insufficient to support personal jurisdiction.  That case is inapposite.  The defendant in *Raju* operated a website through which he sold infringing products to two Virginia residents. *Id.* at 591.  Noting that it was a close question, the court concluded that there was no personal jurisdiction over the defendant because two shipments and a purported testimonial on the website

fact that Deep South Barrels used its website to reach into Virginia to do business there. *See Rice*, 975 F. Supp. 2d at 1367, 1372 (concluding that personal jurisdiction existed in Georgia over nonresident defendant based on defendant's small amount of interactive e-commerce sales to Georgia residents, despite the lack of any ads or marketing targeted at Georgia). And contrary to defendants' argument, Deep South Barrels' sales to Virginia residents were not the result of happenstance; Deep South Barrels purposefully directed its commercial activities into Virginia by constructing an interactive e-commerce website accessible to Virginia residents.[7] Nor is it persuasive to argue, as defendants do, that Deep South Barrels' website sales to Virginia residents are only a small percentage of its total sales. Caselaw persuasively contradicts this argument.[8]

Deep South Barrels' purposeful course of conduct — setting up an interactive e-commerce website accessible to Virginia residents, accepting payment from Virginia residents

---

from a Virginia resident were not enough to show that the defendant was "intentionally directing his website at a Virginia audience" under the *ALS Scan* test. *Id.* at 595. Here, Deep South Barrels made 99 shipments into Virginia. Furthermore, the defendant's website in *Raju* required prospective customers to submit their order via e-mail and then arrange a third-party money transfer. *Id.* at 591. In this case, plaintiff alleges that Deep South Barrels' website is a typical, fully interactive e-commerce website that allows customers to order products directly on the website.

[7] *See Hemi Grp.*, 622 F.3d at 758 (rejecting the argument that defendant's website sales were the result of customers' "unilateral" actions because that argument "ignore[d] several of [defendant's] own actions that led up to and followed the sales": the defendant created the e-commerce website, held itself out to do business in the forum state, and shipped the cigarettes to the forum state).

[8] The fact that Deep South Barrels admits to having 251 customers in Virginia, even though that is a small percentage of its total customer base, shows a consistent level of contact with Virginia residents. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (noting that defendant's contacts with the forum state cannot be random or fortuitous); *see also Rice*, 975 F. Supp. 2d at 1372 (stating that once a non-resident defendant "[opens] itself up for business in [the forum state] through its website, defendant cannot . . . argue that its low level of sales or lack of ads in the state negates purposeful availment of the state's benefits and privileges").

for e-commerce purchases, and shipping multiple products to Virginia residents — is sufficient

to ensure that Deep South Barrels could have "reasonably anticipate[d] being haled into court" in

Virginia for claims arising from its products. *Universal Leather*, 773 F.3d at 559 (internal

quotation marks omitted). As a result, plaintiff satisfies the first two prongs of the *ALS Scan* test.

*ALS Scan*, 293 F.3d at 713. Plaintiff also satisfies the third prong of the *ALS Scan* test. Deep

South Barrels' contacts with Virginia created a potential cause of action in the state's courts

because plaintiff's claims "arise out" of Deep South Barrels' sale of allegedly infringing

products to Virginia residents. *Id.* at 714.[9]

Finally, exercising personal jurisdiction over Deep South Barrels is "constitutionally

reasonable." *Universal Leather*, 773 F.3d at 559. On this record, the burden for this company to

litigate in Virginia is minimal, Virginia has a strong interest in protecting one of its companies

from manufacturers that market allegedly infringing products in Virginia, and plaintiff has an

interest in obtaining relief here. *See Consulting Eng'gs Corp.*, 561 F.3d at 279 (listing these

factors as relevant considerations in assessing the reasonableness of exercising personal

jurisdiction). In sum, Deep South Barrels' use of an interactive e-commerce website to sell its

products to Virginia residents is sufficient to show that (i) Deep South Barrels "purposefully

availed itself of the privilege of conducting activities in the forum state," (ii) that plaintiff's

claims "arise out" of those sales, and (iii) that the exercise of personal jurisdiction is

constitutionally reasonable. *Universal Leather*, 773 F.3d at 559 (internal quotation marks

---

[9] *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–56 (11th Cir. 2013)
(concluding that plaintiff's trademark claims arose out of defendant's contacts with forum state
because defendant sold and distributed allegedly infringing goods in forum state); *Rice*, 975 F.
Supp. 2d at 1372 (concluding that there could be "no legitimate dispute that defendant's
activities in Georgia [were] connected to plaintiff's claims" because the claims arose "directly
from defendant's sales of allegedly infringing products, at least some of which occurred in
Georgia").

omitted). As a result, plaintiff has established a prima facie case of personal jurisdiction over

Deep South Barrels.

**B.**

The next issue is whether personal jurisdiction exists over the individuals Jonathan

Emmons, Elissa Emmons, and Bentley. These individual defendants have no personal contacts

with Virginia that would support a finding of purposeful availment; they do not live in Virginia,

own property in Virginia, have offices, agents, or employees in Virginia, and

have never entered into contracts or made sales in their individual capacities in Virginia. *See id.*

at 560 (stating that courts should consider these factors in determining whether nonresident

defendants have purposefully availed themselves of "the privilege of conducting business in the

forum state"). Despite their lack of personal contacts with Virginia, plaintiff argues that

exercising personal jurisdiction over Jonathan Emmons, Elissa Emmons, and Bentley is

nevertheless permissible based solely on their status as corporate officers of Deep South Barrels.

This is incorrect.

The Fourth Circuit has explained that in "the typical case, the contacts of a company are

not attributed to a corporate agent for jurisdictional purposes," but that corporate officers are

subject to personal jurisdiction if they have "sufficient contacts with Virginia, even if those

contacts [are] made ostensibly on behalf of" their corporation. *ePlus*, 313 F.3d at 177.[10] Given

---

[10] *See also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices cases."); *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983) ("[W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute . . ., he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full

this rule, personal jurisdiction does not exist over Jonathan Emmons, Elissa Emmons, and

Bentley at this point. Plaintiff's allegations against them rest "on nothing more than that [they]

are officer[s] or employee[s]" of Deep South Barrels. *Columbia Briargate*, 713 F.2d at 1064.

Settled Fourth Circuit authority makes clear that such allegations are not enough for personal

jurisdiction over corporate officers. For instance, in *ePlus Technology*, exercising personal

jurisdiction over a defendant was appropriate where the plaintiff there brought claims for credit

fraud and the defendant, acting on behalf of a corporation, faxed credit applications to companies

in Virginia and submitted false information to a credit reporting company to obtain credit from

those companies. *ePlus*, 313 F.3d at 166.[11] The amended complaint's allegations do not show

that type of "'direct personal involvement' in a tort committed in the forum state" that is

necessary to subject Jonathan Emmons, Elissa Emmons, and Bentley to personal jurisdiction in

Virginia for acts taken on behalf of Deep South Barrels. *Columbia Briargate Co.*, 713 F.2d at

1064 (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

Although personal jurisdiction over Jonathan Emmons, Elissa Emmons, and Bentley is

lacking at this point, plaintiff's amended complaint and the parties' exhibits indicate that Deep

South Barrels is a small company. Limited discovery on the jurisdictional issue could plausibly

produce facts indicating that Bentley, Jonathan Emmons, and Elissa Emmons were directly and

---

reach of due process. On the other hand, if the claim against the corporate agent rests on nothing
more than that he is an officer or employee of the non-resident corporation and if any connection
he had with the commission of the tort occurred without the forum state, we agree that, under
sound due process principles, the nexus between the corporate agent and the forum state is too
tenuous to support jurisdiction over the agent personally by reason of service under the long-arm
statute of the forum state.").

[11] *See also Columbia Briargate*, 713 F.2d at 1054, 1065 (concluding that personal jurisdiction
over defendant acting on behalf of a corporation was proper where defendant negotiated a
contract in the forum state, furnished certificates and representations required under the contract
in the forum state, and executed the deed to the purchaser in the forum state).

personally involved in Deep South Barrels' allegedly unlawful activities in Virginia. *Cf.*

*Carefirst*, 334 F.3d at 402 (stating that jurisdictional discovery is unwarranted when a "plaintiff

offers only speculation or conclusory assertions").[12]   After limited jurisdictional discovery takes

place, plaintiff must then "prove[] facts, by a preponderance of the evidence, that demonstrate"

that personal jurisdiction exists over these three defendants. *Grayson*, 816 F.3d at 268.

Because defendants Jonathan Emmons, Elissa Emmons, and Bentley must be dismissed

at this point for lack of personal jurisdiction, there is no need to address defendants' arguments

that plaintiff's claims against these individual defendants should be dismissed for failure to state

a plausible claim for relief.

## C.

Plaintiff's copyright and trademark infringement claims against Carboni and Wood

Harbour require a different analysis, as plaintiff does not allege that Wood Harbour sold

allegedly infringing products to Virginia residents via an interactive e-commerce website.

Instead, plaintiff's amended complaint indicates that Wood Harbour sold Wood Harbour's

products only at Wood Harbour's brick-and-mortar retail stores in Texas. The lack of any

allegations that Wood Harbour or Carboni purposefully availed themselves of the privilege of

doing business in Virginia stands in sharp contrast to the allegations with respect to Deep South

Barrels which, as stated above, are sufficient to support personal jurisdiction. *See infra* Part II.A.

Because there are no facts linking Wood Harbour's allegedly infringing products to Virginia,

there is no personal jurisdiction over Wood Harbour and Carboni with respect to plaintiff's

---

[12] *See also Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1-11-cv-935, 2012 WL
1831536, at *3, 11–12 (E.D. Va. May 18, 2012) (permitting jurisdictional discovery in a case
where plaintiff alleged that personal jurisdiction existed over a corporate officer based on actions
he took on behalf of a corporation).

claims for copyright infringement, trademark infringement, and all related Virginia claims against these two defendants.

The only non-infringement claim that remains against either Carboni or Wood Harbour is plaintiff's breach of contract claim against Wood Harbour. Plaintiff alleges that plaintiff entered into an oral contract with Wood Harbour, under which Wood Harbour agreed (i) that Wood Harbour would pre-pay for wholesale, bulk orders of plaintiff's products, (ii) that plaintiff would send its employees to train Carboni, and (iii) that plaintiff would permit Wood Harbour to use plaintiff's intellectual property, provided Wood Harbour did not sell competing products from plaintiff's competitors. Plaintiff alleges that Wood Harbour agreed to these conditions and placed its first wholesale order in 2008, and that Wood Harbour's wholesale orders continued at least through 2011. Plaintiff further alleges that Wood Harbour violated the contract in 2011 by selling Deep South Barrels' products, along with plaintiff's products, at Wood Harbour's Texas renaissance festival location and other retail locations.

These allegations are insufficient to establish a prima facie case of personal jurisdiction. The Supreme Court has explained that a plaintiff's contract with an out-of-state defendant "*alone* [cannot] automatically establish sufficient minimum contacts" in the plaintiff's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, the crucial inquiry is whether the plaintiff's claims arise out of a contract with a "*substantial* connection" to the forum state. *Id.* at 479. There are a number of factors to consider in assessing whether the parties' contractual relationship supports personal jurisdiction over a nonresident defendant: (i) whether defendant has offices or agents in the forum state or owns property in the forum state, (ii) whether defendant reached into the forum to initiate business, (iii) whether defendant "deliberately engaged in significant or long-term business activities in the forum state," (iv)

16

whether a contractual choice-of-law clause selects forum law to govern any disputes, (v) whether

defendant personally visits a forum-state resident in the forum state regarding the contract, (vi)

the "nature, quality, and extent of the parties' communications" about the contract, and (vii)

whether "the performance of contractual duties was to occur within the forum." *Consulting

Eng'rs*, 561 F.3d at 278.

In light of these factors, personal jurisdiction does not exist over plaintiff's breach of

contract claim against Wood Harbour. Wood Harbour has no offices, agents, or property in

Virginia. Plaintiff does not allege that Wood Harbour does any other business in Virginia, or

that plaintiff and Wood Harbour have entered into any other contracts, or plan to enter into any

future contracts. Plaintiff does not allege that Virginia law governs the oral agreement. Plaintiff

does not allege that Carboni travelled to Virginia to negotiate the agreement in-person with

Weisberg, and the amended complaint provides no insight into the extent of any telephone

conversations between Weisberg and Carboni. And the bulk of the performance contemplated

by the contract took place in Texas, as plaintiff shipped its products to Texas for sale in Wood

Harbour's Texas stores, and plaintiff's employees visited Texas to train Wood Harbour

employees. All of those factors show that personal jurisdiction does not exist over Wood

Harbour with respect to plaintiff's breach of contract claim,[13] and the factors that favor

jurisdiction do not alter that conclusion. For instance, plaintiff's allegation that Carboni initiated

---

[13] *See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993)
(concluding that no personal jurisdiction existed over defendant because the parties' contract did
not have a "*substantial* connection" to the forum state, in part because the contract was not
performed in the forum state; there was no indication that the parties would enter into any future
contracts; the contract did not contain a choice-of-law clause; and the defendant had no offices,
agents, employees, or property in the forum state and did not otherwise do any business in the
forum state).

contact with plaintiff is accorded "special weight,"[14] but that allegation is not dispositive. *See Ellicott Mach.*, 995 F.2d at 478 (concluding that personal jurisdiction was lacking even though there was "no question that [defendant] purposefully initiated the business relationship between the parties."). And the allegations that Wood Harbour agreed to several contractual conditions and received multiple product orders between 2008 and 2011 do not show that the parties' contractual relationship was sufficiently extensive to permit the exercise of personal jurisdiction.[15]

In sum, plaintiff's allegations in the amended complaint do not show that Wood Harbour purposefully directed its activities toward Virginia or "established regularly recurring and ongoing interactions" with defendant in Virginia. *Perdue Foods*, 814 F.3d at 191. Because plaintiff has failed to establish a prima facie case of personal jurisdiction over Wood Harbour and Carboni, all of plaintiff's claims against Wood Harbour and Carboni must be dismissed without prejudice, and defendants' arguments with respect to misjoinder and failure to state a plausible claim for relief need not be addressed.[16]

---

[14] *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009).

[15] *Compare Burger King*, 471 U.S. at 465, 479–80 (holding that personal jurisdiction existed over defendant, a nonresident franchisee, where defendant entered into a "carefully structured 20-year [franchise] relationship" with the plaintiff franchisor; the contract "envisioned continuing and wide-reaching contacts" between the parties and "exacting regulation of virtually every conceivable aspect" of defendant's operations; and defendant agreed to pay the franchisor a $40,000 initial fee, monthly royalties, advertising and promotion fees, and rent); *Perdue Foods v. BRF S.A.*, 814 F.3d 185, 191 (4th Cir. 2016) (concluding that personal jurisdiction did not exist where a contract did "not establish a series of continuing contacts between" the parties in the forum state and the contract did not "promise frequent interactions" between the parties).

[16] Although it is unnecessary to reach the misjoinder issue, it is nonetheless worth noting that despite plaintiff's conclusory allegations that Wood Harbour and Deep South Barrels acted in concert to sell Deep South Barrels products at Wood Harbour stores, it clearly appears that Wood Harbour and Carboni are improperly joined in this action. Rule 20, Fed. R. Civ. P., provides that

## III.

The final issue is whether any of plaintiff's remaining claims against Deep South Barrels

should be dismissed for failure to state a plausible claim for relief under Rule 12(b)(6), Fed. R.

Civ. P. In particular, defendants move to dismiss plaintiff's claims against Deep South Barrels

for (i) trademark infringement under 15 U.S.C. § 1125(a)(1)(A), (ii) common law trademark

infringement, (iii) unfair competition under Virginia law, (iv) a violation of the VUTSA, and (v)

common law misappropriation under Virginia law.

The standard for the factual sufficiency of a complaint is well-established. Under the

familiar *Iqbal/Twombly*[17] standard, the "well-pled allegations of the complaint" must be accepted

as true and the "facts and reasonable inferences derived therefrom" must be construed "in the

light most favorable to the plaintiff." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655,

658 (4th Cir. 2016). The complaint must contain "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face" such that the court can draw "the reasonable

inference" that defendants committed the alleged violations. *McCleary-Evans v. Md. Dep't of*

*Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quotation marks omitted).

---

defendants can be joined in a single action if: "(A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect to or arising out of the same transaction,
occurrence, or series of transactions or occurrences; and (B) any question of law or fact common
to all defendants will arise in the action." Rule 20(a)(2), Fed. R. Civ. P. That Wood Harbour
and Carboni may have violated the same copyrights and trademarks as Deep South Barrels is not
enough to satisfy Rule 20, Fed. R. Civ. P. *See Androphy v. Smith & Nephew, Inc.*, 31 F. Supp.
2d 620, 623 (N.D. Ill. 1998) (stating that even though there was a "common question of law or
fact" because plaintiff alleged that defendants violated the same patents, defendants were
improperly joined because they were "separate companies that independently design,
manufacture, and sell different products in competition with each other"). And plaintiff's breach
of contract claim against Wood Harbour necessarily raises factual and legal issues different from
plaintiff's copyright and trademark infringement claims against Deep South Barrels. *See* Rule
20(a)(2), Fed. R. Civ. P.

[17] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## A.

Defendants first contend that plaintiff's claim for trademark infringement under 15 U.S.C. § 1125(a)(1)(A)[18] against Deep South Barrels should be dismissed because it is time-barred. The Fourth Circuit has stated that a statute of limitations defense must normally "be raised by the defendant through an affirmative defense," and accordingly a Rule 12(b)(6), Fed. R. Civ. P., motion to dismiss, which "tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). But "where facts sufficient to rule on an affirmative defense are [clearly] alleged in the complaint," the statute of limitations defense can be considered on a Rule 12(b)(6), Fed. R. Civ. P., motion. *Id.*

The parties agree that a two-year limitations period applies to plaintiff's § 1125(a)(1)(A) claim. *See East West, LLC v. Rahman*, 896 F. Supp. 2d 488, 504 (E.D. Va. 2012). A trademark owner "has no obligation to sue until the 'likelihood of confusion looms large.'" *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) (quoting McCarthy on Trademarks and Unfair Competition § 31:19 (4th ed. 2016)). Because plaintiff alleges that the infringement is ongoing, plaintiff may maintain a claim for infringement that occurs within the statutory period. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) (stating that parties do not waive the right to sue for infringements within the limitations period, because it is "well established" that "the statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period"). Accordingly, the statute of

---

[18] Although it does not affect the analysis, plaintiff's § 1125(a)(1)(A) claim for "trademark infringement" should be labeled as a claim for false designation of origin. *See Lamparello v. Falwell*, 420 F.3d 309, 312 & n.1 (4th Cir. 2005) (differentiating between claims for trademark infringement, which owners of registered trademarks can bring under § 1114(1), and claims for false designation of origin under § 1125(a)(1)(A)).

limitations is relevant only insofar as plaintiff cannot recover damages for infringements that occurred outside the two-year period. *See id.*[19] As a result, defendants' statute of limitations argument limits damages that can be received but does not bar the claim.

### B.

Plaintiff alleges that Deep South Barrels is liable for common law trademark infringement under the Virginia Consumer Protection Act ("VCPA"). *See* Va. Code § 59.1-196 *et seq.* Plaintiff states in its brief that the inclusion of this claim was an error and that it is not asserting a VCPA claim against Deep South Barrels in this action. Accordingly, this claim is dismissed without prejudice.

### C.

Plaintiff next contends that Deep South Barrels engaged in unfair competition under Virginia law because Deep South Barrels used plaintiff's marks to pass off Deep South Barrels' products as plaintiff's products. Defendants move to dismiss this claim for failure to allege sufficient facts to state a plausible claim for relief. The test for false designation of origin "under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of goods or services involved." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995).[20] Because the same test govern both claims, and defendants do not argue

---

[19] *See also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) ("[T]he statute of limitations is conceivably only a bar to monetary relief for the period outside the statute of limitations; the plaintiff is free to pursue monetary and equitable relief for the time within the limitations period."); McCarthy § 31:33 ("Usually, infringement is a continuing wrong, and a statute of limitations is no bar except as to damages beyond the statutory period.").

that plaintiff failed to allege sufficient facts to make out a plausible claim for relief on its

Lanham Act claim, it follows that plaintiff's Virginia law unfair competition claim survives

defendants' motion to dismiss. *See id.*

### D.

Defendants move to dismiss plaintiff's VUTSA claim as time-barred. The VUTSA

prohibits the misappropriation of another's trade secrets and has a three-year statute of

limitations. Va. Code § 59.1-336, 1-340. Plaintiff filed its original complaint in August 2016.

Defendants argue that this claim is untimely because plaintiff alleges that it learned in 2010 that

Jonathan Emmons had contacted plaintiff's barrel supplier in Mexico, whose contact information

is one of plaintiff's trade secrets, about providing oak barrels to Emmons. Plaintiff argues that

this claim falls within the three-year limitations period because plaintiff did not realize until 2014

that Bentley, plaintiff's former employee who had access to plaintiff's trade secrets, may have

shared plaintiff's trade secrets with Jonathan Emmons.

Plaintiff's argument is unpersuasive. Plaintiff alleges that it learned from its barrel

supplier in 2010 that Emmons contacted the barrel supplier about supplying barrels to Emmons.

Yet, plaintiff did not file its complaint until August 2016, far outside the three-year statute of

limitations period. Although plaintiff may not have connected the dots between Bentley,

plaintiff's former employee who was allegedly privy to plaintiff's trade secrets, and Emmons'

request to the barrel supplier, plaintiff could have taken reasonable steps to learn how Emmons

discovered the barrel supplier's information. *See id.* § 59.1-340 (stating that a misappropriation

action must be brought within three years "after the misappropriation is discovered or by the

---

[20] *See also Lamparello*, 420 F.3d at 312 n.1; *Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr. of Va., Inc.*, 200 Va. 159, 165 (1958) ("Proof of confusion, or the likelihood of confusion, between trademarks or trade names is a fundamental issue when unfair competition is charged.").

exercise of reasonable diligence should have been discovered" and that a "continuing misappropriation constitutes a single claim").[21] As a result, this claim must be dismissed as time-barred.

**E.**

Finally, defendants seek dismissal of plaintiff's claim against Deep South Barrels for common law misappropriation. In essence, plaintiff claims (i) that it came up with the idea of designing miniature barrels for use as beverage containers, cigar humidors, and wedding card depositories, (ii) that plaintiff invested substantial time and resources into commercializing this idea, and (iii) that Deep South Barrels appropriated plaintiff's idea at little or no cost, thereby effectively reaping where it had not sown.

The essential error in plaintiff's misappropriation argument is that Virginia has never recognized a claim for common law misappropriation.[22] No Supreme Court of Virginia decision has adopted a claim for common law misappropriation, and it is inappropriate for a federal court to create such a claim. *See, e.g., Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) ("Under [*Erie*], the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion.").[23]

---

[21] *See also Infomatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 421–22 (E.D. Va. 2011) (concluding that a misappropriation claim under the VUTSA was time-barred where the publication of certain patent documents more than three years before plaintiff filed its suit gave plaintiff "at least constructive notice" of the misappropriation of its trade secrets, thereby imposing on plaintiff a duty to investigate the public patent documents).

[22] The parties did not address the choice of law issue, nor did either side dispute the application of Virginia law to plaintiff's state law claims; instead, the parties proceeded in their briefs and at oral argument on the assumption that Virginia law applies. Accordingly, plaintiff's common law misappropriation claim is appropriately analyzed under Virginia law.

23

A brief review of the history of a claim for common law misappropriation confirms this conclusion. The notion of a common law misappropriation cause of action originated with the Supreme Court's pre-*Erie*[24] decision in *International News Service v. Associated Press*, 248 U.S. 215, 236–40 (1918), in which the Supreme Court concluded that defendant had misappropriated plaintiff's East Coast "hot news" stories by publishing the stories on the West Coast. McCarthy § 10:48.[25] The *International News Service* decision, however, purported to "establish a principal of federal common law," and *Erie* eliminated federal common law in diversity cases. *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 894 (2d Cir. 2011). As such, *International News Service* is "no longer good law." *Id.* For the same reason, the Virginia Supreme Court's decision in *Benjamin T. Crump Co., Inc. v. J. L. Lindsay, Inc.*, 107 S.E. 679, 679–80 (Va. 1921), which addressed the impact of *International News Service* on unfair competition doctrine, is not authoritative. The *Crump* decision is noteworthy, however, because the Supreme Court of Virginia declined to expand the Virginia law of unfair competition beyond its traditional limits to encompass common law misappropriation claims. *Id.* at 679–80, 684. In doing so, the Supreme Court of Virginia emphasized that the "essential element of unfair trading is deception, by means of which goods of one dealer are palmed off as those of another." *Id.* at

---

[23] *See also Grayson v*, 816 F.3d at 272 (declining to "expand South Carolina law by recognizing a cause of action for aiding and abetting common law fraud"); *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989) (declining to create a cause of action under West Virginia law); *Guy v. Travenol Labs., Inc.*, 812 F.2d 911, 915 (4th Cir. 1987) ("A federal court sitting in diversity simply cannot compel a state to provide a cause of action in tort to supplement enforcement of a federal statute.").

[24] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[25] Justices Holmes and Brandeis dissented from the Court's conclusion in *International News Service*. 248 U.S. at 246, 248.

684. No other Virginia court has even cited the *International News Service* decision, confirming that Virginia has not adopted a cause of action for common law misappropriation.[26] Finally, plaintiff's reliance on *PBM Products, Inc. v. Mead Johnson & Co.*, 204 F.R.D. 71 (E.D. Va. 2001), is unpersuasive. Plaintiff points to that court's statement that the "only claims for unfair competition recognized in Virginia are palming off and misappropriation of another's work." *Id.* at 75. Yet a close reading of *PBM Products* reveals that the claim therein at issue was a Lanham Act false advertising claim, not a common law misappropriation claim as alleged here. *Id.* at 72, 75. As a result, that court's remark, cited by plaintiff, is mere *dicta*, and unpersuasive dicta at that, as the *PBM Products* court did not cite, nor could it have cited, any Virginia case law for its assertion that Virginia recognizes a claim for common law misappropriation. In sum, plaintiff's claim for common law misappropriation fails because Virginia does not recognize this claim.[27]

## IV.

For the foregoing reasons, (i) personal jurisdiction exists over Deep South Barrels, (ii) plaintiff's claims against Bentley, Elissa Emmons, and Jonathan Emmons are dismissed without prejudice for lack of personal jurisdiction, (iii) plaintiff's claims against Wood Harbour and Carboni are dismissed without prejudice for lack of personal jurisdiction, (iv) plaintiff's claim

---

[26] *See Monoflo Int'l, Inc. v. Sahm*, 726 F. Supp. 121, 127 (E.D. Va. 1989) ("Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition, *i.e.* 'deception, by means of which goods of one dealer are palmed off as those of another.'") (citing *Crump*, 107 S.E. at 684).

[27] Defendants also argue that the common law misappropriation claim should be dismissed because it is preempted under the VTSA. *See* Va. Code § 59.1-341(A) ("[T]his chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret."). Defendants' argument fails because plaintiff's allegations in this claim do not rest on Deep South Barrels' alleged misappropriation of plaintiff's trade secrets. Accordingly, the VTSA's preemption provision does not apply. *See id.* § 59.1-341(B)(3) (providing that this chapter does not affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret").

against Deep South Barrels for a violation of the VCPA is dismissed without prejudice, (v) plaintiff's claim against Deep South Barrels for a violation of the VUTSA is dismissed with prejudice as time-barred, and (vi) plaintiff's common law misappropriation claim is dismissed with prejudice for failure to state a plausible claim for relief. As a result, only plaintiff's claims against Deep South Barrels for (i) federal copyright infringement under 17 U.S.C. § 501, (ii) a violation of 15 U.S.C. § 1125(a)(1)(A), and (iii) unfair competition under Virginia law survive defendants' dismissal motion.

An appropriate order will issue.

Alexandria, Virginia
March 20, 2017

/s/

T. S. Ellis, III
United States District Judge